No. 59,370

KENNETH BURKHART, JR., an incapacitated person, by J. Byron Meeks, Conservator, *Appellant*, v. PHILSCO PRODUCTS COMPANY, INC., a Kansas Corporation; POWERLINE NYLON TOW ROPES, INC., an Ohio Corporation; RON BURKHART and ELRED BURKHART, *Appellees*.

(738 P.2d 433)

Opinion filed June 12, 1987.

Michael J. Friesen, of Law Offices of Michael J. Friesen, P.A., of Garden City, argued the cause and was on the briefs for appellant.

Tom Berscheidt, of Ward & Berscheidt, of Great Bend, argued the cause and was on the brief for appellee Philsco Products Company, Inc.

Jerry G. Elliott, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and Rae E. Batt, of Kinsley, was with him on the brief for appellee Powerline Nylon Tow Ropes, Inc.

Harry Bleeker, of Turner and Boisseau, Chartered, of Great Bend, argued the cause and Casey R. Law, of the same firm, was on the brief for appellees Ron and Elred Burkhart.

The opinion of the court was delivered by

HOLMES, J.: Plaintiff, Kenneth Burkhart, Jr., appeals from the dismissal of his personal injury lawsuit filed against his father, Elred Burkhart; his brother, Ron Burkhart; Philsco Products Company, Inc. (Philsco); and Powerline Nylon Tow Ropes, Inc. (Powerline).

As all parties apparently concede that discovery was incomplete or that additional discovery was advisable, the facts underlying the appellant's case will be stated very briefly. On October 6, 1981, plaintiff was helping his father and brother on the family farm. Kenneth was driving a John Deere 4010 tractor which became stuck in a rut. He sought assistance from his brother Ron, who was also operating a tractor. Ron threaded a chain around the front axle of Kenneth's tractor and through the loop on one end of a tow rope. At the other end of the rope, Ron put a clevis through the loop and dropped a pin through the clevis and the draw bar on his tractor. Ron proceeded to pull Kenneth's tractor from the rut when "the hitch pin failed or the clevis separated causing the clevis to be propelled like a slingshot into Plaintiff's head." Kenneth suffered severe injuries, including the loss of sight in one eye and permanent brain damage. He is now an incapacitated person and this action was filed on his behalf by his legally appointed conservator.

The basis for Kenneth's claims is that the nylon tow rope was unreasonably dangerous and had dangerous propensities known to Powerline, the alleged manufacturer, and to Philsco, the alleged distributor. Plaintiff asserts there was an inadequate warning of the dangers inherent in using the rope and also

asserted claims against the corporate defendants based upon negligent design and manufacture of the rope and breach of warranty. The Burkhart defendants were charged with negligent use and hookup of the rope and failure to warn of the danger inherent in the rope. The crux of the lawsuit, however, appears to be a failure to provide an adequate warning.

Following considerable discovery by way of interrogatories and requests for admissions, two pretrial conferences were held by the court. At the end of the second pretrial conference the court, *sua sponte*, dismissed plaintiff's case, with prejudice, stating:

"I'm going to enter an order dismissing the case for the reason that at the time of the pretrial plaintiff's counsel has put before the Court insufficient facts upon which a jury verdict could be supported."

Plaintiff has appealed the order of dismissal with prejudice. We reverse.

Plaintiff asserts two issues on appeal: (1) The trial court improperly conducted the pretrial conferences, and (2) the trial court abused its discretion in dismissing plaintiff's case. In addition to the stated reason for dismissal, it appears from a review of the transcripts that the court was also dismissing the case for failure on the part of plaintiff to make discovery. The dismissal was based upon plaintiff's failure to produce reports from his expert witnesses after being ordered to do so and plaintiff's inability to state the name of a particular person or persons who would testify that the nylon tow rope was manufactured by Powerline and distributed by Philsco. The rope was purchased by Elred Burkhart from the Kinsley Co-operative which sold Powerline ropes along with other ropes, some of which were purchased through Philsco. Plaintiff, at the pretrial conferences, was unable to state that he had a witness who could positively testify that the rope in question was a Powerline product distributed by Philsco. Plaintiff asserts several complaints about the trial court's procedure at the pretrial conferences, all but one of which apply only to the initial conference.

Pretrial conferences are controlled principally by K.S.A. 1986 Supp. 60-216 and Supreme Court Rule 140 (235 Kan. cix). The statute was amended in 1986 but the amendment is not directly involved here. The statute provides in part:

"In any action, the court shall on the request of either party, or may in its discretion without such request, direct the attorneys for the parties to appear before it for a conference to consider:

(1) The simplification of the issues;

(2) The trial of issues of law the determination of which may eliminate or affect the trial of issues of fact;

(3) The necessity or desirability of amendments to the pleadings;

(4) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;

(5) The limitation of the number of expert witnesses;

(6) The advisability of a preliminary reference of issues to a master;

(7) Such other matters as may aid in the disposition of the action.

The court in its discretion may, and shall upon the request of either party make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

The 1986 amendment adds a subsection (b) which sets forth specific sanctions which may be applied for failure to comply with the pretrial procedures. Supreme Court Rule 140 sets forth in more detail the procedure and objectives of the pretrial conference. In *Tillotson v. Abbott*, 205 Kan. 706, 472 P.2d 240 (1970), we stated the purpose of the pretrial conference:

"The pre-trial conference and the order entered thereon are an important part of the procedural process. They are provided to acquaint each party in advance of trial with the factual contentions of the opposite parties as to matters in dispute. The opportunity for maneuver and surprise during the trial is reduced. As a result of the pre-trial conference all parties are better able to prepare their testimony on the issues to be tried." p. 709.

The trial court has broad discretion in the handling of the pretrial conference.

Two pretrial conferences were held in the present case. Plaintiff's procedural complaints are directed primarily to the first conference held April 19, 1985. At the outset it should be noted that much of the confusion in this case could have been avoided if the trial court had followed the mandate of Supreme Court Rule 140(e) that "[t]he court *shall* prepare the pretrial order or designate counsel to do so." Many of the issues on appeal hinge on what the court "ordered" at the first pretrial conference as interpreted by the parties. No written pretrial

order was ever prepared and resort must be made to the transcripts to determine what the court may have intended. Plaintiff throughout these proceedings has been represented by Michael J. Friesen and Phyllis Wendler of Garden City. Ms. Wendler appeared at the first pretrial conference.

Plaintiff first contends that the trial court abused its discretion in ordering that plaintiff's deposition be taken by a medical doctor selected by the defendants. The record reflects, however, that the court did not *order* that the deposition be so taken; rather, the court merely suggested it as a means of deposing the plaintiff under adverse conditions. The court's suggestion was in response to the expressed concern of Lee Turner, counsel for the Burkhart defendants, regarding potential hearsay statements made by plaintiff to his medical doctors and Ms. Wendler's concern for the health and welfare of her client. Plaintiff apparently suffered severe brain damage, had been adjudicated an incapacitated person, and was in need of constant professional care and attention. Plaintiff's counsel advised the court that plaintiff would not be able to testify at trial and the court was faced with the dilemma of the plaintiff's doctors possibly testifying as to statements from the plaintiff and how to adequately assess the reliability of such hearsay statements. The court stated:

"THE COURT: What I would consider doing in this case, Mr. Turner, is—would be to request that all defendants hire a medical doctor to video tape and take the deposition of this witness, before I expose him to all the attorneys.

"MS. WENDLER [counsel for plaintiff]: You mean to be examined to see whether he is competent?

"THE COURT: You hire a doctor to go in there and video tape an interview with the plaintiff, the injured person.

. . . .

"THE COURT: We don't need to explain about his condition at this point. You're going to want to get in statements that he has made. I'm going to want to know whether or not those statements should be allowed in or whether or not they are made up by some physician. By having a medical doctor question him as to his story, I'm going to be able to have an idea of the reliability of hearsay statements.

. . . .

"THE COURT: I'm not saying that his video tape deposition at this point is going to be admitted. I want to know whether or not the hearsay statements are reliable hearsay to go to the jury."

During these proceedings, counsel for Philsco and Powerline made it clear they did not want to depose the plaintiff by doctor, counsel, or otherwise. Nothing further came of the issue and the question of whether the court "ordered" that plaintiff's deposition be taken by a doctor was not an issue at the second pretrial conference when the case was ultimately dismissed. We do not construe the judge's suggestions as an order. Although somewhat unusual, it appears the court was seeking some solution to the potential hearsay problem which might arise and at the same time shield plaintiff from possible adverse reaction to the customary deposition procedure. As no "order," written or oral, was made on the issue and as it was not a basis for the dismissal we cannot say the suggested procedure constituted an abuse of discretion, regardless of how extraordinary it may have been. Counsel for the Burkhart defendants evidently made no subsequent attempt to take the plaintiff's deposition.

Plaintiff next contends that the court abused its discretion in ordering plaintiff's counsel to make a formal opening statement to a "make-believe" jury at the pretrial conference.

After counsel for one of the defendants asked for evidence linking his client to the accident, the following discussion took place:

"THE COURT: Look, if this is a pre-trial the first thing I do at a pre-trial, Miss Wendler, is stand you up and make you give me an opening statement. Can you give me an opening statement of what your evidence will show?

"MS. WENDLER: I suppose I could give you an abbreviated one.

"THE COURT: If you give me a complete opening statement then Mr. Berscheidt's questions will be answered, right?"

Later the court stated:

"THE COURT: What I want is an opening statement for the pre-trial, you know, make believe the jury is sitting over there, give them an opening statement.

"MS. WENDLER: As far as names, Your Honor, I'm afraid I'd have to—(interrupted)

"THE COURT: So, you aren't ready for pre-trial today because you don't know who your witnesses are."

Supreme Court Rule 140(g)(1) provides:

"(g) The pretrial conference will be conducted substantially in conformity with the following procedural steps:

(1) Plaintiff will state concisely his factual contentions and the theory of his action."

The court was attempting to ascertain whether plaintiff had any evidence which would show that the tow line used at the time of the accident was manufactured by Powerline and distributed by Philsco. We think the demand that counsel make a "jury opening statement" was overly broad and certainly more extensive than required by the statutes or Rule 140. The court appears to have been trying to make the point that if a complete statement was made, all parties could then proceed with a full understanding of the case and the contemplated evidence. Plaintiff complains on appeal that no such demands were made of the defendants; however, the proceedings never progressed to the point where defendants were required to state their positions. Again, as this issue was not a crucial element in the dismissal of the case, no error is found in the procedure followed even though it appears from the record to be somewhat harsh and demanding.

Plaintiff further contends that the court abused its discretion in requiring plaintiff to prove the origin of the rope through the testimony of witnesses rather than through the use of documentary evidence. Although it is not clear, plaintiff is apparently referring to the fact that after counsel for defendant Philsco inquired as to any evidence plaintiff had linking Philsco to the tow rope in question, the following colloquy took place:

"MS. WENDLER: Powerline manufactures ropes, the raw material, they put the hooks on it, they distribute it to Mr. Berscheidt [counsel for Philsco].

"THE COURT: What witnesses will say that?

"MS. WENDLER: It will be shown by invoices as well as the chain of distribution will show—(interrupted)

"THE COURT: We do not have witnesses we have documents that say this rope ties in Mr. Berscheidt's clients. Do you have documents that show that, right?

"MS. WENDLER: Uh-huh.

"THE COURT: Have you seen that document, Mr. Berscheidt?

"MR. BERSCHEIDT: I have a document—we have documents showing that we have sold to Kinsley Co-op Nylon tow ropes, Philsco has. We also have evidence that the Kinsley Co-op purchased nylon rope from a number of distributors and various brands and no one can identify that nylon rope. . . .

. . . .

"THE COURT: What other evidence do you have to show it is Philsco's rope? The invoices, will Mr. Burkhart testify that it was Philsco's rope?

"MS. WENDLER: Mr. Burkhart can't testify.

"THE COURT: Do we have anyone who can say that that is Philsco's rope?

"MS. WENDLER: Well, the people at the Kinsley Co-op.

"THE COURT: Which person there will say it is Philsco's rope?

"MS. WENDLER: I really couldn't say which one, I know we talked to some of them."

We believe the plaintiff has misinterpreted the court's statements. We find no indication on the court's part that documentary evidence would not be acceptable at trial. It appears the court was attempting to elicit the relevant sources of information that would tie the corporate defendants to the particular tow rope in this case. We do not consider the court's statements at this point as precluding proper proof of the source of the rope, whether oral or documentary in nature, but more in the nature of an attempt to pinpoint the evidence. As such, it was not an order precluding documentary proof and the complaints of the procedure on this issue are without merit.

The next issue is one which appears to have contributed to the ultimate dismissal of this action. At the initial pretrial conference, plaintiff's counsel indicated that several experts would testify at trial in the fields of rope identification, what constitutes an adequate warning, economic factors relating to damages, farm accidents related to tow ropes, metallurgy, and perhaps others. In addition, numerous medical doctors and experts had been listed in response to interrogatories. None of the experts had been deposed by the defendants and plaintiff's counsel was not definite in her identification of the experts. Defense counsel asked the court to order plaintiff to provide reports from each expert which plaintiff intended to call at trial. Counsel for plaintiff then advised the court that she had no reports or written statements from the proposed experts, that she had not intended to secure reports, and that defendants could take depositions of the expert witnesses. Evidently the proposed experts had been used by plaintiff's counsel before in similar litigation and she and Mr. Friesen knew the nature of their proposed testimony. Counsel also pointed out to the court that plaintiff was without funds and was cared for by social security and government assistance. Defense counsel, showing uncharacteristic concern for the expense that might be incurred by their respective

clients, insisted that the court order plaintiff to obtain the reports. The court then ordered that plaintiff's counsel furnish a complete report from each expert who would testify and that if any of the reports were not deemed satisfactory or sufficiently complete, the expert providing such a report would be precluded from testifying and plaintiff would be limited to using the insufficient report. The reports were to be submitted to defense counsel by July 1, 1985, at which time a second pretrial conference would be held. We interpret the judge's remarks in this regard to be a definite order although, as previously stated, no written order was ever prepared or "entered" as contemplated by K.S.A. 1986 Supp. 60-216(a) and as required by Supreme Court Rule 140.

The reports of plaintiff's experts were never obtained, with one exception, and, at the second pretrial conference finally held November 15, 1985, such failure was an obvious factor in the dismissal of the lawsuit. More will be said about the November pretrial conference later in this opinion. Plaintiff asserts the trial court abused its discretion in directing the plaintiff to provide the expert witness reports, that the oral directions of the court did not constitute a proper order pursuant to the statutes and rules and, as the order was never "entered," plaintiff did not have to comply with it. It is also asserted that requiring plaintiff to furnish reports for defendants when the witnesses were available for depositions is not contemplated by the statutes and rules and constituted an abuse of discretion. We do not agree that such a procedure is unavailable or that its use, if properly conducted, constitutes an abuse of discretion.

The purpose of the pretrial conference and discovery is to eliminate the element of surprise from trials and to simplify the issues and procedure by full disclosure to all parties of the anticipated evidence, and factual and legal issues, and to consider "[s]uch other matters as may aid in the disposition of the action." K.S.A. 1986 Supp. 60-216(a)(7). The statutes and rules governing discovery and pretrial procedures are to be broadly construed to accomplish their intended objectives. K.S.A. 1986 Supp. 60-226 sets forth several procedures available in making discovery. This statute was also amended in 1986 but the

amendments do not affect the issues herein. Subsection (b) of the statute provides in part:

"(4) *Trial preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subsection (b)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

"(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. *(ii) Upon motion the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subsection (b)(4)(C), concerning fees and expenses as the court may deem appropriate."* (Emphasis added.)

Subsection (b)(4)(C) provides:

"(C) Unless manifest injustice would result, (i) the court *shall* require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subsections (b)(4)(A)(ii) and (b)(4)(B); and (ii) with respect to discovery obtained under subsection (b)(4)(A)(ii) the court may require, and with respect to discovery obtained under subsection (b)(4)(B) the court shall require, the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert." (Emphasis added.)

Considering the broad general scope and purpose of discovery, we think the use of expert reports in lieu of depositions or other methods of discovery is an acceptable method of pursuing "further discovery by other means." However, here the trial court should have ordered the fees and expenses to be paid by defendants. Again, if a proper written order had been prepared, all parties would have been informed as to what exactly was required. It is true that the record does not reflect any request by plaintiff for an order allowing fees and expenses, but such should have been a part of the original order of the court.

Finally, plaintiff complains that the defendants were allowed to turn both pretrial conferences into a fishing expedition. Plaintiff's basic objection is that the repeated requests by counsel for Philsco and Powerline for evidence that would tie the rope used at the time of the accident to them, and the court's insistence that plaintiff provide such evidence, constituted a fishing expedition. As stated by plaintiff in his brief, "[r]ather than conduct formal discovery utilizing proper discovery procedure, the defendants sought to conduct their discovery during

the pretrial conferences which the court allowed." In 6 Wright and Miller, Federal Practice and Procedure: Civil § 1525 (1971), the authors in discussing Fed. R. Civ. Proc. 16, the counterpart of K.S.A. 60-216, state:

"There are some functions that the pretrial conference is not designed to perform. *Rule 16 may not be used solely as a fishing device, or to enable one party to make use of his opponent's trial preparation, or as a discovery proceeding.* Rather than being a game of hide and seek, the conference should be an open interchange between opposing counsel that is designed to program the best possible trial on the merits." (Emphasis added.)

In 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-216 (1979), the comments reflect, however, that an early preliminary discovery conference serves an important function:

"It should be noted that Rule 140 does not preclude the holding of preliminary conferences before discovery has been completed, and informal conferences are indeed helpful if not necessary during the discovery stages to expedite discovery and narrow the issues so as to make some discovery by other means unnecessary. The rule is directed at the decisive conference where the issues are finally determined and the pretrial order is settled upon to determine the course of the trial.

"In fact the Kansas Supreme Court has seen the advantages of an early conference and its Rule 136, applicable to district courts, requires a 'discovery conference' to be held upon request or upon the court's own initiative. Such a request in a damage action has the effect of limiting the taking of depositions until after the discovery conference has been held except on stipulation or affirmative order of the court.

"The advantage of holding an early conference is two-fold. It brings the parties together before burdensome and perhaps unnecessary depositions and other discovery processes have been resorted to, often resulting in fruitful settlement negotiations at an earlier stage than might be possible otherwise. Furthermore, the conference itself should be used as a means of discovery. Often information can be obtained at the conference which otherwise could be obtained only by interrogatories or depositions. Thus the need for discovery can be developed at the conference, and if the conference results in the disclosure of the desired information, expensive discovery by other routes can be avoided to the benefit of the parties." p. 106.

One of the problems in the instant case is that it appears the court never really had control of the proceedings. A large portion of the proceedings was dominated by aggressive defense counsel and the proceedings took on the posture of a discovery conference rather than an actual pretrial conference. See Supreme Court Rule 136 (235 Kan. cvi). All counsel apparently were of the

opinion that additional discovery was necessary and that the case was not really ready for a final pretrial conference. Viewing the initial conference as a discovery conference, the request that plaintiff furnish the factual basis for his claims and the evidence he would rely upon was not unreasonable. Plaintiff's complaints that the two conferences were turned into fishing expeditions for the benefit of the defendants lacks merit.

We now turn to the pretrial conference of November 15, 1985, and the actual dismissal of the case which led to this appeal. Plaintiff was represented by Michael J. Friesen at the second conference and two principal problems immediately arose. Mr. Friesen had failed to obtain reports from all but one of his expert witnesses and took the position that he did not have to comply with the court's oral directions from the first pretrial conference as there was no written pretrial order and, in any event, the plaintiff should not be required to do the defendants' discovery. The second issue which immediately created problems between Mr. Friesen and the court was the inability of Mr. Friesen to specifically name a witness or witnesses who would testify that the rope in question was manufactured and distributed by the corporate defendants. This set the stage for what appears from the record to have been an adversarial proceeding involving Mr. Friesen and the court, with defense counsel adding fuel to the fire.

Mr. Friesen was adamant that he did not have to furnish reports from his expert witnesses or prove his case by specific witnesses who could definitely identify the rope. His position was that if defendants wanted to know how he would prove his case they could "[c]ome to the trial to find [out]." Counsel for the Burkhart defendants was insisting upon a report from one of plaintiff's experts when the following exchange took place:

"THE COURT: Mr. Turner, at this point Mr. Friesen's position is there are the names of the people, I don't have to give you anything. I'm going to put my evidence on and then you come—and you come to the defense of it. Do I understand that's where you're operating from, Mr. Friesen?

"MR. FRIESEN: Yes, sir.

"THE COURT: And he doesn't have to give you [Mr. Turner] anything else.

. . . .

"MR. FRIESEN: I think they're entitled to ask him [the expert witness]. I certainly don't quarrel with their right to take his deposition . . . . I don't think I'm required by affidavit or letter or report. I know I'm not, there's no authority.

"THE COURT: You don't really have to tell us at pretrial in order to show that you have enough evidence to take it to a jury? Don't you—don't you even have to do that? Right?

"MR. FRIESEN: That's right.

"THE COURT: Okay. And we will simply wait until the plaintiff puts on [his] case and then know whether or not we have enough to let it go ahead, right?

"MR. FRIESEN: That's right.

"THE COURT: You don't really have to give us any information up until that point, right, Mr. Friesen?

"MR. FRIESEN: I give you the information that's required by Rule 140, yes, sir, I have to do that."

Later in the proceedings the following transpired:

"THE COURT: Do we have a witness that can say that this rope was manufactured on October 5, 1983?

"MR. FRIESEN: Would you need that?

"THE COURT: Do you have anyone on the identity of the rope, Mr. Friesen?

"MR. FRIESEN: Sure, but down to the absolute individual rope, absolutely not.

. . . .

"THE COURT: You know, I'd like to try this lawsuit but I don't know about it yet—enough about it after you—after our second pretrial. You know, I'm down to the point, Mr. Friesen, where because you want to keep your case a secret, I think I'm going to be forced to throw it out.

"MR. FRIESEN: On what basis?

"THE COURT: On the basis that you have insufficient facts known to the Court now to go to a jury."

At that point all defense counsel reiterated more discovery was necessary and suggested the plaintiff be given additional time to furnish reports from his expert witnesses and if not done, then the court should consider dismissing the case. The court then ruled:

"THE COURT: I can see no reason to drag this case any further, Mr. Friesen. You know we had an earlier pretrial, there's a transcript of that. To continue it for another 30 days will be a waste of time. I'm going to enter an order dismissing the case for the reason that at the time of the pretrial plaintiff's counsel has put before the Court insufficient facts upon which a jury verdict could be supported."

The court then went on to state the dismissal was with prejudice. The journal entry of judgment approved by the court expanded somewhat on the court's oral ruling. It stated in part:

"[T]he Court dismissed plaintiff's Petition against the defendants, with prejudice, for the following reason:

1. Failure to provide the Court with sufficient factual information to allow the Court to determine whether this matter should be submitted to a jury.

". . . As part of this Journal Entry the Court incorporates herein all statements and findings made by the Court during the Pretrial Conferences as they appear in the transcript."

On appeal, plaintiff asserts that the action of the trial court in dismissing his case with prejudice was tantamount to granting summary judgment when there remained disputed issues of fact and at a time when all parties conceded discovery was incomplete, and therefore the dismissal was premature and constituted an abuse of the trial court's discretion. Defendants, on the other hand, assert that the dismissal was justified as a sanction for plaintiff's failure to make discovery and his refusal to comply with a direct order of the court made at the first pretrial conference. A careful study of the transcripts of both pretrial hearings leads to the conclusion that the dismissal was, in effect, a sanction for failure to make discovery based upon the failure to furnish expert witness reports and that the case was also dismissed due to what the court conceived to be a fatal flaw in plaintiff's case.

As pointed out earlier, the use of reports from expert witnesses is an acceptable alternative to the more customary methods of discovery but if such a procedure is to be required, the court should make appropriate orders to assess the expense thereof to the requesting party. Here no such order was forthcoming and we think the court erred in ordering plaintiff to obtain and produce such reports without also ordering defendants to pay the expenses in connection therewith. See K.S.A. 1986 Supp. 60-226(b)(4)(C).

We also are of the opinion that the trial court erred in dismissing the action because "plaintiff's counsel has put before the Court insufficient facts upon which a jury verdict could be supported" and as a sanction for not making discovery. Where discovery has not been completed and there are disputed questions of fact, it is not the function of a trial court at a pretrial conference to rule that a party's proposed evidence is insufficient as a matter of law. We appreciate the court's concern about what it perceived as an inability to prove an essential element of plaintiff's case. However, on the state of this record, we cannot

agree that the only way plaintiff could make a submissible case was to produce a witness who would categorically identify the Burkhart rope as a product of the corporate defendants. The record does not reflect what documentary evidence was to be produced. Counsel for Philsco contended that the depositions of the Burkhart defendants proved the rope did not come in a Philsco package. What evidence plaintiff might have had to the contrary or whether the deposition testimony would stand up on trial are matters of speculation at this time. Without going into detail, we think it quite possible that plaintiff might produce sufficient evidence to allow a jury to determine whether the Burkhart rope came from the corporate defendants without specific testimony that the rope was actually manufactured and distributed by them. In any event, a determination that plaintiff's proposed case was insufficient as a matter of law was premature when all parties concede that discovery was incomplete and there remained controverted questions of fact as well as law.

Was the dismissal justified as a sanction for failure of the plaintiff to make discovery? We think not. We recognize that dismissal is in some instances appropriate. K.S.A. 60-237(b)(2) provides in part:

"(2) *Sanctions by court in which action is pending.* If a party or an officer, director or managing agent of a party or a person designated under K.S.A. 60-230(b) or 60-231(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this section or under K.S.A. 60-235, *the judge before whom the action is pending may make such orders in regard to the failure as are just,* and among others the following:

. . . .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, *or dismissing the action or proceeding or any part thereof,* or rendering a judgment by default against the disobedient party." (Emphasis added.)

The dismissal of a lawsuit and its equally severe sanction of granting a default judgment, while appropriate in certain circumstances (see *Binyon v. Nesseth,* 231 Kan. 381, 646 P.2d 1043 [1982]; *Independent Mfg. Co. v. McGraw-Edison Co.,* 6 Kan. App. 2d 982, 637 P.2d 431 [1981]; *Fields v. Stauffer Publications, Inc.,* 2 Kan. App. 2d 323, 578 P.2d 1138, *rev. denied* 225 Kan. 843 [1978]; *Prather v. Olson,* 1 Kan. App. 2d 142, 562 P.2d

142 [1977]), should only be utilized as a last resort when other lesser sanctions are clearly insufficient to accomplish the desired end.

In *Vickers v. City of Kansas City*, 216 Kan. 84, 531 P.2d 113 (1975), we reversed an order of the district court which dismissed plaintiff's case for violation of a discovery order. In the opinion we stated:

"It is an elementary principle of law that the purpose of discovery rules is to provide an effective means of detecting and exposing false, fraudulent and sham claims and defenses; to make available, in a simple, convenient, and inexpensive way, facts which· otherwise could not be proved except with great difficulty; to educate the parties in advance of trial as to the real value of their claims and defenses; to expedite litigation; to safeguard against surprise; to prevent delay; to simplify and narrow the issues, and to expedite and facilitate both preparation and trial. (23 Am. Jur. 2d, Depositions and Discovery, § 156, p. 493.)

"The legislature of our state had seen fit to promulgate discovery rules and regulations by the passage of K.S.A. 60-226 through K.S.A. 60-237. Throughout the statutory procedure the trial court is vested with large amounts of discretion in its direction of pre-trial discovery. Likewise, the trial court is vested with considerable discretion in the enforcement of its previously issued discovery orders and in the assessment of sanctions against noncomplying parties.

"K.S.A. 1973 Supp. 60-237 provides to a trial court a series of sanctions, varying in severity, which the court may use against parties unjustifiably resisting discovery. (See, *B. F. Goodrich Tire Company v. Lyster*, 328 F.2d 411 [5th Cir. 1964].)" p. 90.

In discussing the provisions of K.S.A. 60-237, which authorizes sanctions for failure to make discovery, the court said:

"The statute specifies that a judge 'may make such orders in regard to the failure [to comply] as are just.' This language on its face compels the conclusion that the legislature intended to vest discretion in the trial judge to decide among the various alternative orders available to him, and to choose the most appropriate sanction suitable to the history and circumstances of the case before him." p. 91.

"Rules of procedure are a means of attaining justice and not an end to justice. In final analysis, a court has a responsibility to do justice between man and man. General principles cannot justify denial of the parties their day in court except upon a serious showing of willful default (*Gill v. Stolow*, 240 F.2d 669 [2d Cir. 1957]).

"Where a party fails to comply with a production order in the course of discovery proceedings, the trial court is required in the exercise of its power of judicial discretion to determine which of the variety of available sanctions it will impose by its judgment. In making this determination the trial court should consider whether or not the documents to be produced go to a dispositive issue in

the case, and whether the party seeking discovery may therefore be protected by the imposition of a sanction short of dismissal. (*Bernat v. Pennsylvania R. Co.*, 14 F.R.D. 465, [E.D. Pa. 1953].) Another factor to consider in making this determination is whether the party ordered to produce has failed to comply due to his inability to comply with the order, and not due to willfulness or bad faith." p. 93.

In the instant case we are of the opinion that the court's order relative to obtaining and producing reports from all expert witnesses could have been enforced by less drastic sanctions. For example, the court could have ordered that, upon failure to produce the reports, the defendants would be authorized to take the depositions of the expert witnesses, with all fees and costs thereof assessed to plaintiff's counsel. On the other hand, as previously pointed out, any order for reports not already in existence should have included provisions for defendants to pay the fees and expenses of obtaining such reports. Most of the cases in which a dismissal or a default judgment have been held proper sanctions involve parties who refuse or fail to follow a discovery order. Here, plaintiff is an incapacitated person without ability to control any stage of the proceedings or to assist or direct his attorney. To deprive plaintiff of his day in court for the actions of his attorney, when other lesser sanctions may have been sufficient, constitutes an abuse of the trial court's discretion.

The dismissal for failure of plaintiff to designate a specific witness who would testify that the rope was produced and distributed by Powerline and Philsco was simply an error as to the evidence necessary to allow a case to go to the jury. In addition, the standard applied requiring specific evidence of every fact to be proved at trial was erroneous and overly strict. Discovery, for whatever reason, was not complete; there were obvious disputed questions of fact, and the case was not at a proper stage to be summarily dismissed. Upon completion of discovery, a motion for summary judgment pursuant to the statutes and rules may be appropriate but not at this point of the proceedings.

Finally, we do not condone Mr. Friesen's attitude and his apparent disdain for the discovery process as reflected by the record. With a more cooperative attitude, this entire appeal could have been avoided and the case disposed of on its merits long

before this. The court's frustration with counsel is readily understandable and sanctions directed to counsel rather than the plaintiff may have been entirely appropriate.

The judgment of the district court is reversed and the case is remanded with directions to set aside the dismissal and for further proceedings consistent with this opinion.

MILLER, J., concurs in the result.