(923 P.2d 504)
No. 72,529

HENRY BOYLE, *Appellant/Cross-Appellee*, v. WILLIAM HARRIES;
WILLIAM KENT; APPLIED MICRO TECHNOLOGY, INC.; and
AMT DEVELOPMENT, *Appellees/Cross-Appellants*.

Opinion filed August 2, 1996.

*Michael L. Hodges*, of Mission, and *Michael R. Lawless*, of Overland Park, for appellant/cross-appellee.

*William E. Quirk*, of Shughart Thomson & Kilroy, P.C., of Kansas City, Missouri, and *Steven D. Ruse* and *Thomas A. Sheehan*, of Shughart, Thomson & Kilroy, P.C., of Overland Park, for appellees/cross-appellants.

Before GERNON, P.J., GREEN, J., and PHILIP L. SIEVE, District Judge, assigned.

GERNON, J.: This appeal involves a shareholder derivative suit. A jury trial resulted in a $975,000 verdict on behalf of the plaintiff, Henry Boyle. This verdict was reduced to $533,500 by the trial judge. The reduction of the verdict is but one of several issues raised in this complex and fact-sensitive case.

Mega Circuits, Inc., (Mega) makes and sells printed electronic circuit boards used in computers and other electronics. Mega was started in 1984 by Kevin Gassen, Mark Gassen, Patrick Boyle, and Henry Boyle. The Gassens were actively involved in the business. Henry Boyle was involved until 1985, when he left to pursue other interests. Patrick Boyle was never involved in the day-to-day operation of the companies.

Mega was seemingly always under-capitalized. It borrowed $250,000 as start-up money. In addition, in 1987, Mega was penalized for failing to pay employee withholding tax. Needing capital, Mega negotiated an agreement with AMT Development.

AMT Development is a partnership. The partners include William Kent, Barbara Kent, and Judith Harries. William Kent and William Harries also control a company named Applied Micro Technology, Inc., (AMT). AMT was a principal customer of Mega.

In 1987, Mega, in exchange for $75,000 from AMT Development, agreed to transfer 50 percent of its stock to AMT Development and to allow William Kent and William Harries to become officers and directors of the corporation.

After the agreement with AMT Development, AMT Development owned 50 percent of Mega and the Gassens owned 38 percent. The balance of the stock was owned by other minor shareholders, including Henry Boyle. At the time of trial, Boyle owned 10 percent of Mega. After the transfer, Mega's board of directors consisted of Harries, Kent, and the two Gassens.

The record contains an uncontroverted statement that on the day Harries and Kent bought into Mega, Harries stated, "[W]e're going to F the small shareholders."

Almost immediately, Mega was called upon to extend special considerations to AMT, both as to price and as to delivery times.

After AMT Development acquired stock in Mega, AMT accounted for more than 25 percent of Mega's gross sales. This percentage is presumably even higher, given the pricing considerations and undercharges AMT received from Mega.

AMT was paying 11¢ per square inch for circuit boards purchased from Mega before the buy-in. After the buy-in, the charge increased to approximately 12¢ per square inch in 1988, and eventually reached 20¢ per square inch in 1991. While a considerable increase in price, the record reveals that other customers were paying twice as much or more for similar orders. In addition, AMT demanded early delivery on its orders but was unwilling to pay current accelerated delivery charges.

Mega's financial situation continued to deteriorate. In 1990, Mark Gassen resigned from Mega, in part due to health problems.

His position on the board was never filled, thus giving Kent and Harries effective control of the board.

In 1991, Kevin Gassen discussed with Harries the possibility of declaring bankruptcy. Kevin Gassen then sought the advice of an attorney and learned that Mega's preferential treatment given to AMT was illegal. Gassen then conducted an audit of the company. After reviewing the audit, Kevin Gassen sent Kent and Harries a letter in December 1991, informing them of the nature and extent of the damages suffered by Mega due to the preferential treatment given to AMT. Their response was that in February 1992, the board of Mega voted 2 to 1 to fire Kevin Gassen due to "poor management."

Henry Boyle became aware of the preferential treatment given to AMT after the audit. Boyle testified that at no time did he authorize such treatment.

Henry Boyle and Kevin Gassen filed suit in 1993 against Harries, Kent, AMT, and AMT Development. They alleged breach of fiduciary duty, restraint of trade, and unjust enrichment. Kevin Gassen later withdrew from the suit. Only the breach of fiduciary duty claim was allowed to be considered by the jury.

After hearing the testimony of several witnesses, the jury found the existence of a breach and returned separate verdicts of $487,500 against Harries and $487,500 against Kent. The trial court combined these two amounts for a total verdict of $975,000 and, then, reduced the total damage figure to $533,500 to reflect its pretrial order. The trial court then allocated that amount between Harries and Kent, so they each were assessed $266,750.

Afterward, Harries and Kent filed a motion to stay execution of the judgment while the post-trial motions were pending. The court granted the motion upon the condition that they post a supersedeas bond in the amount of $275,000. Harries and Kent then filed a motion seeking judgment notwithstanding the verdict, or, in the alternative, a new trial, or, in the alternative, an alteration of the judgment, but the court denied the motion. The court also directed that the supersedeas bond should be altered to name Henry Boyle as the beneficiary. The parties appeal several of the court's rulings.

## Limitation of Damages

Boyle argues that it was error to limit compensatory damages to the amount established in its pretrial order.

K.S.A. 60-216(a) provides that a pretrial order controls the future course of the action "unless modified at the trial to prevent manifest injustice." This statute bestows broad discretionary power upon the trial courts. *State Farm Fire & Cas. Co. v. Liggett*, 236 Kan. 120, 124, 689 P.2d 1187 (1984). Consequently, "[t]he admission of exhibits not previously disclosed or the admission of the testimony of witnesses not previously disclosed is discretionary with the trial court. Discretion is abused only when no reasonable [person] would take the view adopted by the trial court." 236 Kan. at 124.

In *Burkhart v. Philsco Products Co.*, 241 Kan. 562, 738 P.2d 433 (1987), the Supreme Court noted the purpose of a pretrial conference:

" 'The pre-trial conference and the order entered thereon are an important part of the procedural process. They are provided to acquaint each party in advance of trial with the factual contentions of the opposite parties as to matters in dispute. The opportunity for maneuver and surprise during the trial is reduced. As a result of the pre-trial conference all parties are better able to prepare their testimony on the issues to be tried.' " 241 Kan. at 565 (quoting *Tillotson v. Abbott*, 205 Kan. 706, 709, 472 P.2d 240 [1970]).

The pretrial order indicates Boyle was asking for $3,600,085 in total damages. Of that amount, $533,500 was claimed to be damages for undercharges to AMT by Mega. Boyle moved to amend the total damages figure to $4,104,885.22 on the day of the trial to reflect new evidence. The court denied the motion and limited the recovery to the amount claimed in the pretrial order. However, the court allowed Boyle's expert to testify as to the new evidence and the revised amount of damages at trial. The new evidence consisted of records which had long been covered by a discovery order but had been secreted in the trunk of a car belonging to one of the defendants until a few days before trial.

The jury returned separate verdicts against Harries and Kent of $487,500 each. The trial court aggregated the amounts and then

reduced the total to $533,500 to reflect its pretrial order, assessing $266,750 to each defendant.

Generally, our appellate cases support the trial judge's discretion in allowing an amendment to a pretrial order. See *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, Syl. ¶ 4, 815 P.2d 72 (1991); *Herrell v. Maddux*, 217 Kan. 192, 194, 535 P.2d 935 (1975); *Robertson v. Ludwig*, 12 Kan. App. 2d 571, 582, 752 P.2d 690, *rev'd on other grounds* 244 Kan. 16, 765 P.2d 1124 (1988).

In *Brown* and *Robertson*, the courts refused to allow new legal theories to be amended to the pleadings because that would have prejudiced the plaintiffs. Here, Boyle was attempting to include newly discovered data to adjust his damage computations, not a new cause of action which Harries and Boyle would be unprepared to defend against. Those cases are also distinguishable because the juries were not allowed to even consider the new legal theories, while in the present case the court did allow the jury to hear the new evidence on damages.

In *Herrell*, the trial court granted the defendant's request to amend the pretrial order at the conclusion of trial to include the affirmative defense of contributory negligence. 217 Kan. at 193. The Supreme Court found the trial court abused its discretion in permitting the amendment because the defendant did not show any obvious injustice from the failure to claim the defense. The Supreme Court further found that by the trial court allowing the amendment, the plaintiff was denied the opportunity to address the issue during the trial. 217 Kan. at 195.

We conclude that under the circumstances here, the trial court should have allowed the amendment to the damages as reflected by the new data obtained just 3 days before trial and corroborated by Boyle's expert witness.

Generally, a trial court has the authority to compel the parties to agree to the undisputed facts at a pretrial conference; however, "the trial court should not attempt to decide disputed issues of fact." *In re Estate of Countryman*, 203 Kan. 731, 737, 457 P.2d 53 (1969); see *Connell v. State Highway Commission*, 192 Kan. 371, 375, 388 P.2d 637 (1964).

The jury considered the testimony of the parties and reached its own determination of damages on March 25, 1994. The court, however, filed a pretrial order on April 1, 1994, 7 days after the conclusion of the trial. As the measure and amount of damages depended upon the evidence adduced at trial, the court's order in effect constituted a judgment improperly limiting the jury's factual determination.

## Contemporaneous Objection

Boyle next argues that Harries and Kent cannot challenge the expert testimony on the revised damages calculation because they did not raise a specific and timely objection to this evidence. Harries and Kent contend they did raise a contemporaneous objection to the new evidence on damages.

Generally, "[i]n order to raise the admissibility of evidence as an issue on appeal, the record must show a timely and specific objection. K.S.A. 60-404. If a continuing objection is lodged, failure to object when the evidence is subsequently readmitted does not bar raising the issue on appeal." *McKissick v. Frye*, 255 Kan. 566, 582, 876 P.2d 1371 (1994). Furthermore, a "variance between pleading and proof is waived if the opposing party does not make timely objection." *Forster v. Fink*, 195 Kan. 488, 492, 407 P.2d 523 (1965).

Our reading of the record leads us to conclude that there was a sufficient continuing objection to the admission of new damages evidence.

## Challenge to Jury Verdicts

Boyle's final contention on appeal is that Harries and Kent cannot challenge the individual verdicts rendered by the jury because they did not object to the court's jury instructions. Harries and Kent do not dispute their failure to object to the jury instructions on damages but contend this failure does not prevent them from challenging the determination of liability as a matter of law.

K.S.A. 60-251(b) provides:

"No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he or she objects and the grounds of his or her objection unless the instruction is clearly erroneous."

The only instruction to the jury on damages was Instruction No. 18, which stated: "If you find that Mega Circuits, Inc. was damaged as alleged then you must award plaintiff such sum as you believe will fairly and justly compensate Mega Circuits, Inc. for the damages you believe were sustained as a result of the occurrences alleged."

The court did not instruct the jury on whether liability against Harries and Kent was assessed individually or jointly and severally, nor did the parties request an instruction on this determination.

During the hearing on jury instructions, Boyle's counsel stated, "The balance of the verdict form appears to be fine." Harries and Kent never mentioned the verdict form at this hearing.

The question of joint and several liability is part of Kent and Harries' cross-appeal. Under the circumstances here, Kent and Harries are not barred from challenging the court's decision to assess individual liability.

## CROSS-APPEAL
### Inconsistent Judgment

Harries and Kent argue that the jury's special findings are contrary to the general verdict and to Boyle's claim of breach of fiduciary duty. Harries and Kent contend that the special findings absolve them of liability in that the findings support their statute of limitations defense.

Boyle counters by claiming that Harries and Kent have waived the statute of limitations defense because they did not raise it in a timely manner.

(a) Statute of Limitations Defense

Boyle filed this action on July 12, 1993. The defendants answered on July 28, 1993, but did not affirmatively assert the statute of limitations. Boyle filed an amended petition on October 29, 1993.

At the pretrial conference in February 1994, the defendants moved to amend their answer to raise the statute of limitations defense and file an answer to the amended petition.

The defendants sought to have an instruction on the statute of limitations, which was objected to, and the court then informed

counsel that special questions would be submitted to the jury on the statute of limitations and that, depending on the responses, the court would rule as a matter of law.

Although Harries and Kent may not assert the statute of limitations, the general verdict must still be reconciled with the special findings. After the evidence was presented, the court instructed the jury that Harries and Kent were alleged to have breached their fiduciary duty in following manners:

"A. Failure to pay for services and products received from Mega Circuits, Inc. for AMT.

"B. Paid less than fair market price for products and services from Mega Circuits, Inc. for AMT

"C. Took unfair advantage of their position to preempt work of other customers in favor of AMT, Inc.

"D. Failure to act towards Mega Circuits, Inc. as reasonably prudent directors would act and by their self-dealing, harmed Mega's profitability."

After deliberating, the jury returned general verdicts against Harries and Kent for breaching their fiduciary duty to Mega's shareholders. The jury also found in answers to special interrogatories that Mega first sustained substantial injury from the breach of fiduciary duty in March or April 1987. The jury further found that Mega could not reasonably have ascertained the injury until October 1991.

K.S.A. 60-249(b) provides in relevant part:

"When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."

See also *Knape v. Livingston Oil Co.*, 193 Kan. 278, 280, 392 P.2d 842 (1964) (reviewing general principles involving special findings and general verdicts).

Read as a whole, we find that the jury believed that Harries and Kent caused substantial injury to Mega when they became directors in 1987. The jury also found that Mega could not ascertain the fact of substantial injury until October 1991. On their face, these findings appear to be consistent with one another.

The findings are also consistent with the general verdict. "In considering special findings the court is not permitted to isolate one and ignore others, but all are to be considered together, and if one interpretation leads to inconsistency and another to harmony with the verdict, the latter is to be adopted." *Knape v. Livingston Oil Co.*, 193 Kan. at 280.

Here, Harries and Kent engaged in a series of self-dealing transactions between AMT and Mega that started from the time they became members of Mega's board. When suit was finally brought against Harries and Kent, these transactions were still continuing. While Mega may have been aware of these individual transactions, the jury found that Mega could not have reasonably ascertained the extent of these transactions until the date the audit was conducted. We agree this finding is consistent with the general verdict that Harries and Kent breached their fiduciary duty because they were breaching their duty to Mega on that date.

(b) Is Boyle prevented from recovering any damages occurring prior to February 18, 1990?

K.S.A. 60-513(a)(4) sets a 2-year statute of limitations for breach of fiduciary duty. See *Resolution Trust Corp. v. Scaletty*, 257 Kan. 348, 353, 891 P.2d 1110 (1995). The action does not accrue "until the act giving rise to the cause of action first causes substantial injury, or . . . until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. 60-513(b).

In this case, the jury found that substantial injury to Mega was not reasonably ascertainable until October 1991. K.S.A. 60-513(b) specifically states: "[I]f the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." Thus, the damage award does not need to be modified to be within the statute of limitations because the statute of limitations did not begin running

on the action until October 1991. The present action was filed on July 12, 1993, and is well within that time frame.

### Joint and Several Liability

Harries and Kent argue the court erred in assessing liability against them individually rather than jointly and severally. Because this issue involves a question of law, this court's review is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

Both parties rely upon *Sieben v. Sieben*, 231 Kan. 372, 646 P.2d 1036 (1982), as support for their respective contentions. Harries and Kent cite *Sieben* for the proposition that Kansas apportions liability between multiple intentional tortfeasors jointly and severally. Boyle, however, cites *Sieben* for the contention that the amounts in separate verdicts cannot be awarded jointly unless the jury's intent to award the total is shown.

In *Sieben*, John Sieben sued Thomas Sieben and Robert Coffey for a battery that occurred while John was attempting to repossess some equipment. He also sued their employer, H. J. Sieben Construction Co., Inc., on the theory of respondeat superior. The jury returned separate verdicts in the following amounts:

|                          | Actual    | Punitive |
| ------------------------ | --------- | -------- |
| Thomas Sieben            | $20,000   | $8,000   |
| Robert Coffey            | $10,000   |          |
| H. J. Sieben Constr. Co. | $20,000   | $8,000   |

On appeal, Thomas Sieben, Coffey, and their employer argued, among other things, that the trial court erred in allowing the jury to allocate the damages among them. The Supreme Court first noted that the enactment of comparative fault legislation has not changed the common-law rule of joint and several liability in situations involving intentional torts. 231 Kan. at 378. The court also reviewed several general principles on the issue, two of which are relevant to the present case:

" 'The overwhelming weight of authority is to the effect that in the absence of statutory authorization, no apportionment of compensatory damages may be incorporated in the judgment establishing the liability of joint tortfeasors, generally on the theory that the plaintiff should not be denied the possibility of collecting the full amount of his judgment from any one of the defendants. Therefore, in

actions against two or more persons for a single tort, it is improper to return two verdicts for different sums against different defendants upon the same trial; there may be only one verdict for a single sum against all who are found guilty of the tort, irrespective of the degree of culpability. This is true even though the defendants plead separately, or are charged with distinct and different acts contributing to the injury.' § 76.

. . . .

" 'Where a jury apportions damages as between tortfeasors without stating the total amount of the awards, the courts have in a number of cases held that the aggregate amount of the separate assessments could not be awarded jointly, at least where the jury's intention to award the aggregate was not demonstrated. In other cases, the verdict assessing equal amounts of damages against each of several tortfeasors without stating an aggregate amount has been held to have been intended as an award against all of the tortfeasors jointly of a sum equivalent only to the amount assessed against each.' § 80." 231 Kan. at 378 (quoting 74 Am Jur. 2d, Torts § 76, p. 680, § 80, p. 690).

The *Sieben* court also recognized that Kansas had addressed the issue and stated that " 'in actions for damages against two or more tort-feasors the jury has no authority to apportion the damages among the defendants, in the absence of a statute specifically authorizing such apportionment.' " 231 Kan. at 379 (quoting *Hubbard v. Havlik*, 213 Kan. 594, 603, 518 P.2d 352 [1974]). The court concluded by holding that Thomas Sieben, Coffey, and their employer were jointly and severally liable for the injury caused to John and reduced the amount of damages awarded to $28,000. 231 Kan. at 379.

Applying *Sieben* to the present case, we conclude that Harries and Kent are jointly and severally liable. Boyle has not shown any indication that Harries and Kent should be treated differently from one another. Harries and Kent were both co-owners of AMT and members of Mega's board of directors. The alleged undercharges benefitted them equally, and their actions clearly contributed to one indivisible injury, namely, Mega's lost profits. In addition, Kansas does not have a statute that allows the jury to apportion damages against directors who breach their fiduciary duty, and, in the absence of such a statute, the common law controls. Thus, corporate directors who breach their fiduciary duties to the shareholders and the corporation are jointly and severally liable.

This ruling is consistent with Kansas law regarding liability in situations involving indivisible injuries. See, *e.g.*, *Milwaukee Ins. Co. v. Gas Service Co.*, 185 Kan. 604, 609, 347 P.2d 394 (1959) (where two individual's independent tortious acts combine to produce an indivisible injury, either tortfeasor may be held for the entire damage). It is noteworthy that other jurisdictions also follow the same principle on breach of fiduciary duty. See *Radol v. Thomas*, 772 F.2d 244, 259 (6th Cir. 1985), *cert. denied* 477 U.S. 903 (1986) ("The law is clear that directors and officers of a corporation are jointly and severally liable if they jointly participate in a breach of fiduciary duty or approve, acquiesce in, or conceal a breach by a fellow officer or director."); *Higgins v. Shenango Pottery Company*, 279 F.2d 46, 52-53 (3d Cir. 1960), *cert. denied* 364 U.S. 899 (1960); *Seaboard Industries, Inc. v. Monaco*, 442 Pa. 256, 263, 276 A.2d 305 (1971); *Nienaber v. Katz*, 69 Ohio App. 153, 162, 43 N.E.2d 322 (1942).

### Supersedeas Bond

Finally, Harries and Kent contend the journal entry of judgment and the supersedeas bond should be modified to reflect that Boyle does not have a personal interest in the judgment because this case is a shareholder derivative action.

On May 19, 1994, the court filed its journal entry of judgment, which recites "judgment should be and is hereby entered in favor of Plaintiff Henry Boyle and for the benefit of Mega Circuits, Inc." and against Harries and Kent. On June 2, 1994, the court granted Harries and Kent's motion to stay execution of the judgment while the post-trial motions were pending on the condition that Harries and Kent post a supersedeas bond in the amount of $275,000. The court later ordered the bond modified to include the name of Henry Boyle as a beneficiary.

Harries and Kent did not file a motion to correct the alleged error under K.S.A. 60-260 or to clarify the court's rulings before raising this issue on appeal. Ordinarily, " '[a] point not presented to the trial court will not be considered for the first time on appeal.' " *Hephner v. Traders Ins. Co.*, 254 Kan. 226, 231, 864 P.2d 674

(1993) (quoting *Plummer Development, Inc. v. Prairie State Bank,* 248 Kan. 664, Syl. ¶ 3; 809 P.2d 1216 [1991]).

To support their contentions, Harries and Kent rely on a motion dismissing Kevin Gassen as a plaintiff in the action because "this is a derivative action and only one stockholder is needed as a nominal plaintiff." Harries and Kent also point out that Boyle's counsel argued during closing argument that the case was a derivative action.

This court has recently discussed derivative and direct shareholder actions in *Richards v. Bryan*, 19 Kan. App. 2d 950, 961-62, 879 P.2d 638 (1994), and noted:

"A claim is said to be derivative if injury is either to the corporation directly or to the shareholder but mediated through the corporation. [Citations omitted.] A shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation. [Citations omitted.] 'Whether a cause of action is individual or derivative must be determined from the 'nature of the wrong alleged' and the relief, if any, which could result if plaintiff were to prevail.' *Kramer v. Western Pacific Industries*, 546 A.2d 348, 352 (Del. 1988)."

However, this court in *Richards* also recognized an exception to the distinction between derivative and direct shareholder actions in the context of closely held corporations:

"In a close corporation, the corporation is generally composed of a majority shareholder or group and a minority shareholder or group. Because of the difficulty in determining if a suit must be brought as a direct or a derivative action, an increasing number of courts are abandoning the distinction between a derivative and a direct action because the only interested parties are the two sets of shareholders. Furthermore, some courts have recognized that it is often difficult and futile to bring a derivative action against a closely held corporation. As explained by one authority, '[e]ven if a minority shareholder overcomes procedural hurdles in a derivative action, a strong disadvantage is that any recovery accrues to the corporation and hence remains under the control of the very parties who may have been defendants in the litigation.' 2 O'Neal and Thompson, O'Neal's Close Corporations § 8.11, p. 122 (3d ed. 1992). For this reason, some courts permit oppressed minority shareholders to bring direct suits for breaches of fiduciary duties by the majority, even though the minority shareholders' grievance is primarily based on damage to the corporation." 19 Kan. App. 2d at 962-63.

The *Richards* court noted the Kansas Supreme Court has never expressly addressed the issue but recognized that the Supreme Court, in *Sampson v. Hunt*, 233 Kan. 572, 584-85, 665 P.2d 743 (1983), has "expressed its intent to intervene on behalf of dissatisfied shareholders if corporate directors behave fraudulently." 19 Kan. App. 2d at 964. This court concluded by stating:

"[I]f a corporation is closely held, a court, in its discretion, may treat an action raising derivative claims as a direct action if it finds to do so will not (1) unfairly expose the corporation to a multiplicity of actions; (2) materially prejudice the interests of creditors in the corporation; or (3) interfere with a fair distribution of the recovery among all interested persons." 19 Kan. App. 2d at 965.

In this case, both the petition and the amended petition stated that the "[p]laintiffs bring this action on behalf of themselves and all other stockholders of Mega similarly situated and on behalf of Mega itself." In the pretrial order, the court also found that "Henry Boyle is the shareholder representative for the [derivative] claims. Plaintiffs also assert, by way of direct action, these claims on an individual basis." However, the injuries that Boyle alleged occurred in his breach of fiduciary claim are injuries to the corporation itself. Moreover, the trial court did not make any of the findings under *Richards* to determine if Boyle could maintain a direct action. The judgment entry also implies that Boyle's judgment was for the corporation and not for him. Thus, the judgment entry is sufficient on its face.

## FINDINGS AND DIRECTIONS

Consistent with our conclusions and findings herein, we direct:

(a) Based on our finding that the trial court erred in not amending the pretrial order as it related to damages, but recognizing that the jury had all of the evidence before it regarding the measure of damages, we direct that the amount of the jury award, $975,000, be restored as the verdict herein.

(b) Consistent with our findings and the law as we find it, Harries and Kent are jointly and severally liable for the entire amount of the jury verdict.

(c) This matter is remanded to the district court with instructions to enter judgment consistent with the rulings and findings herein.

Reversed and remanded with directions.