(91 P.3d 1239)
No. 90,820

NORTON FARMS, INC., *Appellee*, v. ANADARKO PETROLEUM CORPORATION, *Appellant*, and HAMMER CONSTRUCTION CO., INC., *Appellee*.

Opinion filed June 25, 2004.

*Daniel H. Diepenbrock*, of Miller & Diepenbrock, P.A., of Liberal, and *Martin Detloff*, of Anadarko Petroleum Corporation, of The Woodlands, Texas, for appellant.

*Wayne R. Tate*, of Tate & Johnson, L.L.C., of Hugoton, for appellee Norton Farms.

*Tracy A. Cole*, of Gilliland & Hayes, P.A., of Hutchinson, for appellee Hammer Construction Co., Inc.

Before MALONE, P.J., GREENE and MCANANY, JJ.

GREENE, J.: Anadarko Petroleum Corporation (Anardarko) appeals the judgment entered by the district court in favor of Norton Farms, Inc. (Norton) after a jury found Anardarko 100% at fault in the design and construction of a ramp for Norton's circle pivot irrigator that traversed Anadarko's oil and gas structures on Norton's agricultural leasehold. Anadarko claims numerous trial errors. We affirm in part, reverse in part, and remand for new trial.

*Factual and Procedural Overview*

When Norton expanded its lease of land in Stevens County for farming operations to include a quarter where Anadarko operated a gas well, Norton brought to Anadarko's attention that a compressor shed located near the well would be in the path of Norton's circle pivot irrigation system. After the initial discussion, the field

foreman for Anadarko moved the shed, removed some additional equipment, and mentioned to Norton that he might install a cement bag ramp to assure that the system would traverse or clear all oil and gas structures on the Anadarko lease. Apparently, Norton did not express objection to this idea, and Anadarko proceeded to contract with Hammer Construction Co., Inc. (Hammer) to construct the ramp, which was to consist of several bags of QuikCrete stacked two bags high in the path of the sprinkler.

Some 2 weeks after construction of the ramp, Norton noticed water shooting into the air and observed that the irrigation system had collapsed approximately 80 to 90 feet past the ramp on a berm or bridge that had been constructed by Norton for the same irrigation system to cross Anadarko's tailwater pit. The collapse rendered the system non-functional, not only for the quarter containing Anadarko's operations, but also the other three quarters in the section. Although the system was repaired by Norton, its corn crop was without water for a full week, thus negatively affecting yield from the entire section served by the system.

Norton brought a negligence action against Anadarko, ultimately alleging negligence in the design, construction, and placement of the cement bag ramp, and seeking damages including the cost of repair and the loss in yield of the corn crop. The initial petition was amended to join Hammer as an additional defendant. The case proceeded to a jury trial after the district court denied Anadarko's motion for summary judgment, stating in part:

> "The fertile imagination of this court cannot fathom how it could be anticipated that a mechanical device such as the center pivot irrigation sprinkler could traverse these concrete rocks set one on top of the other, with no binding between them and no way to hold them together, but simply make them boulders independent of each other under the tread of the sprinkler. Truly, it would be a sight akin to a hog walking across ice."

On the day prior to trial, the district court denied Anadarko's motion to amend the pretrial order to include as an exhibit a videotape of a similar circle pivot irrigation system successfully negotiating similar (but also dissimilar) ramps. The court denied the motion on grounds that the proposed amendment was not timely and the tape would not be admissible anyway.

During the jury trial, the district court excluded photographic evidence and related testimony that similar ramps had been used successfully for these purposes by Anadarko. Additionally, Anadarko's expert witness as to causation was not permitted to testify on the ground that such expert testimony was not necessary because some of the jurors had personal experience with irrigation systems. The district court also denied Anadarko's motion for directed verdict, which claimed that Norton had failed to establish causation or negligence of Anadarko. The jury found Anadarko 100% at fault, and assessed damages totaling $75,717. Anadarko appeals the resulting judgment for damages and costs, but does not appeal the jury's negative finding as to any fault of Hammer.

*Standard of Review*

We review Anadarko's claims that the district court erred in denying amendment of the pretrial order and in ruling on evidentiary objections for an abuse of discretion. See *Smith v. Printup*, 262 Kan. 587, 592, 938 P.2d 1261 (1997); *State Farm Fire and Cas. Co. v. Liggett*, 236 Kan. 120, 124-25, 689 P.2d 1187 (1984). Discretion is abused only when no reasonable person would take the view adopted by the trial court. The exercise of judicial discretion requires that the court have proper regard for what is just and fair under the existing circumstances, and that it not act in an arbitrary fashion or unreasonable manner. *Liggett*, 236 Kan. at 124-25. We review Anadarko's claim that the district court erred in denying a motion for directed verdict with the same standard employed by the trial court. Where reasonable minds could reach different conclusions based upon the evidence, even when viewed most favorably to the party opposing the motion, the motion must be denied and the matter submitted to the jury. See *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 126, 815 P.2d 72 (1991).

*Did the District Court Abuse Its Discretion in Denying Anadarko's Motion to Amend the Pretrial Order?*

Anadarko sought to amend the pretrial order to list a new exhibit, specifically, a videotape made to show that irrigation equipment similar to Norton's could traverse a cement bag ramp of a nature

similar to that built for Norton. The tape was made and delivered to Norton's counsel only 2 weeks prior to trial. Anadarko argues that the exhibit was created in response to the district court's summary judgment statement quoted above and in response to the more specific claims of negligence that were set forth in the final pretrial order. Anadarko suggests that fairness required that Anadarko should have been given the opportunity to respond Norton's new information.

The problem with Anadarko's argument is that it had an opportunity to create and list the exhibit before approving and finalizing the pretrial order. The court's summary judgment statements were made on February 28, 2003, and the pretrial order was not signed and filed until March 19, 2003. Anadarko's videotape exhibit was not created until March 27, 2003, and its motion to amend was not filed until April 11, 2003, the Friday before commencement of trial. Norton argues that Anadarko could have either refused to sign the pretrial order or added the videotape to the list of exhibits before approving and submitting the order to the court. We agree, and this is critical to our conclusion that there was no abuse of discretion by the district court in denying the motion to amend.

K.S.A. 2003 Supp. 60-216 provides that:

"[A pretrial] order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only by agreement of the parties, or by the court to prevent manifest injustice."

This statute confers broad discretionary power upon the trial court, and we generally support this discretion upon appellate review. See *Boyle v. Harries*, 22 Kan. App. 2d 686, 691, 923 P.2d 504 (1996). Moreover, Supreme Court Rule 140(f) (2003 Kan. Ct. R. Annot. 189) provides for quite specific procedures for any party to state objections to a pretrial order for consideration by the court prior to its entry.

Anadarko relies upon *Boyle* to support the notion that fairness requires liberality in the amendment of pretrial orders, but we conclude that *Boyle* is inapplicable unless the pretrial order requires revision due to a party secreting evidence until a few days

before trial. 22 Kan. App. 2d at 690. Anadarko also relies upon *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 856 P.2d 1313 (1993), as supporting a belated amendment of the pretrial order in the interest of fairness, but *Hurlbut* permitted *both* parties to submit revised expert opinions and calculations; here, any fairness to Anadarko by the addition of the video tape must be balanced against the unfairness to Norton of having to refute or challenge a videotape created on the eve of trial.

The essential purpose of pretrial conference procedure is to prevent surprise and enable the parties to prepare for trial with the assurance that contentions, issues, and evidence will not be moving targets. See *Herrell v. Maddux*, 217 Kan. 192, 194-95, 535 P.2d 935 (1975); *Tillotson v. Abbott*, 205 Kan. 706, 709, 472 P.2d 240 (1970); *Trimble, Administrator v. Coleman Co., Inc.*, 200 Kan. 350, 358-59, 437 P.2d 219 (1968). Under these circumstances, we conclude that the district court did not abuse its discretion in denying the motion to amend the pretrial order.

*Did the District Court Abuse Its Discretion in Excluding Evidence of Nonoccurrence of Accident With Similar Ramps?*

Anadarko argues that the district court erred in excluding testimony and photographic evidence of Anadarko's experience with similar irrigation ramps. The argument is that such evidence should not have been excluded as irrelevant since it was relevant to the issue of foreseeability. We agree.

All relevant evidence, defined as "evidence having any tendency in reason to prove any material fact," is admissible in a civil trial. K.S.A. 60-401(b); K.S.A. 60-407(f). A court's determination of relevancy is a matter of logic and experience, not a matter of law. *State v. Abu-Fakher*, 274 Kan. 584, 596, 56 P.3d 166 (2002). In a negligence action, proximate cause is an element of negligence, and foreseeability is an element of proximate cause. *Aquirre v. Adams*, 15 Kan. App. 2d 470, 472, 809 P.2d 8 (1991). An accident which is not reasonably foreseeable by the exercise of reasonable care and prudence is not sufficient grounds for a negligence action. *Woodruff v. City of Ottawa*, 263 Kan. 557, 561, 951 P.2d 953 (1997). Natural and probable consequences are those which hu-

man foresight can anticipate because they happen so frequently they may be expected to recur. *Chaplin v. Gas Service Co.*, 194 Kan. 26, 30, 397 P.2d 317 (1964).

Although there are some holdings to the contrary, evidence of the absence of previous accidents at the same place where the plaintiff was injured, or of the absence of prior injuries arising from the use or operation of the equipment whereby the plaintiff was injured, has generally been held admissible as tending to show that the place or equipment was not dangerous. 29 Am. Jur. 2d, Evidence § 553, p. 622. Our Supreme Court addressed the relevance of nonoccurrence of prior accidents in *Schlobohm v. United Parcel Service, Inc.*, 248 Kan. 122, 128-29, 804 P.2d 978·(1991). The plaintiff fell in an entranceway and claimed that the defendant was negligent in the construction and maintenance of said entranceway. The Supreme Court found no error in admitting evidence that there had been no prior accidents in the entranceway.

"We conclude evidence of no prior complaints or accidents in the UPS entranceway was properly admitted on the issue of safety. The nonoccurrence of prior accidents is evidence tending to establish that a reasonably careful person could negotiate the doorway safely absent negligence." 248 Kan. at 129.

See *Timsah v. General Motors Corp.* 225 Kan. 305, 316, 591 P.2d 154 (1979); *Cook v. Railway and Bridge Co.*, 101 Kan. 103, 107, 165 Pac. 803 (1917); *Field v. Davis*, 27 Kan. 400, 402-06 (1882).

These authorities generally recognize that evidence that the circumstances alleged to have constituted negligence in a particular case have not been the cause of prior complaint or accident may be relevant to show that an accident was not reasonably foreseeable by reason of such circumstances.

The only distinction between these authorities and the evidence tendered by Anadarko is that experience with *similar* ramps is not necessarily as cogent as is experience with the *specific* ramp in question. Nevertheless, we conclude that the degree of similarity goes to the weight rather than the admissibility of such evidence, and that the rationale of the authorities as to admissibility applies equally here.

We conclude that the evidence of Anadarko's experience with similar ramps in similar contexts was probative on the issue of fo-

reseeability, and that since the evidence was important to Anadarko's defense and there was no suggestion that such evidence was otherwise prejudicial, its exclusion was an abuse of discretion.

### Did the District Court Abuse Its Discretion in Excluding the Expert Opinion Testimony as to Causation?

Anadarko called an expert to testify on the cause of the sprinkler collapse. His report indicates that he would have testified that the cause of the collapse was a hole in the bridge across the tailwater pit, and that the sprinkler was not damaged by the cement bag ramp. The district court did not permit the expert to testify on the ground that there was no necessity for such testimony, stating, *inter alia*:

"[T]his particular jury is really very expertise [*sic*] on [causation], they're as close as you can be. You've got a lot of people here—I think everybody on that jury during voir dire admitted that they knew what sprinklers were, they saw them every day, they were familiar with them. You've even got one guy who probably thinks he's expert, but—and, you know, there was a juror here that told you on Monday that he had two sprinklers stuck.

"My biggest problem here is that of necessity. I don't see the necessity of this testimony as to aid the jury. I don't think it's any help to them. I think it could even be a hindrance to them, when you look at what this witness, I think, can testify to, what I know he can testify to, isn't needed to determine the issues in this lawsuit."

Expert opinion testimony must be helpful and necessary for the particular circumstances of the case in order to be admissible.

"Necessity arising out of the particular circumstances of the case is the basis for the admission of expert testimony. To be admissible, expert testimony must be helpful to the jury. Where it is not helpful, that is, where the normal experience and qualifications of laypersons serving as jurors permit them to draw proper conclusions from given facts and circumstances, expert testimony is inadmissible." *State v. Papen*, 274 Kan. 149, 157, 50 P.3d 37 (2002).

Anadarko argues that Kansas authorities have acknowledged that the mechanical operation of farm equipment is not an area of general knowledge for juries. See *Siruta v. Hesston Corp.*, 232 Kan. 654, 665, 659 P.2d 799 (1983). Moreover, Anadarko argues that Kansas authorities recognize that expert testimony can be particularly helpful when dealing with accidents to which there are no

eyewitnesses. See *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, 631, 822 P.2d 591 (1991). Anadarko suggests that where expert testimony is tendered to explain how mechanical machinery collapsed where no eyewitness observed the collapse, the testimony is particularly helpful to jurors who would otherwise have to speculate as to causation. We agree, and we note that exclusion of such testimony is particularly prejudicial where, as here, Norton was permitted to testify as to the lack of alternative causalities.

Although we concede that the admissibility of expert testimony has spawned appellate decisions that may not always seem entirely consistent, expert opinion to show causation in negligence actions is generally admissible unless based upon evidence that is too uncertain or speculative. *Dieker v. Case Corp.* 276 Kan. 141, 160-61, 73 P.3d 133 (2002); *Siruta*, 232 Kan. at 665-66; *Farmers Ins. Co. v. Smith*, 219 Kan. 680, 689, 549 P.2d 1026 (1976). In contrast to these cases, Norton relies on *Lollis v. Superior Sales Co.*, 224 Kan. 251, 580 P.2d 423 (1978), in support of the district court's exclusion of expert testimony. *Lollis* held that it was proper to exclude expert testimony of causation or contributing circumstances in an auto collision, but the decision was buttressed by the fact that such issues are within the normal experience and qualifications of lay jurors. 224 Kan. at 260-61. Indeed, it is the rare lay juror who does not drive a vehicle and understand the natural consequences of certain conduct at the wheel; *Lollis* is of little assistance where the jury is called upon to determine causation for collapse of rather sophisticated mechanical farm machinery—this is the teaching of *Siruta* and *Dieker*.

Finally, we note that the district court seems to have considered the specific jury in question to possess *special* knowledge on the subject of irrigation equipment, thus negating any necessity for expert testimony. This rationale reflects an erroneous application of the necessity rule—the "normal experience and qualifications of laypersons serving as jurors" is *not* measured by one or more jurors in a specific case, but rather the general experience of average lay jurors. In fact, the court's apparent comfort by reason of having a juror who "thinks he's an expert" in such matters demonstrates the error and the associated danger of excluding testimony under such

circumstances: the ultimate issue of causation may be influenced if not determined by one who is not subjected to the rigors of appropriate qualification, requisite statutory basis, or cross-examination. These perils have been recognized in early Kansas authority admonishing juror reliance on personal knowledge.

"A jury has right to avail itself of such general knowledge as all men possess, but not to resort to any knowledge derived from employment in any kind of business. Supposing this jury were all composed of machinists, they are not to be guided by their knowledge of machinery—a knowledge which only they who are engaged in such occupation possess—but by the testimony offered before them; and that which is true of the jury as a whole, is also true to each individual member thereof. He may not testify to the others." *Craver v. Hornburg*, 26 Kan. 94 (1881).

See *Clark v. Ford*, 7 Kan. App. 332, 51 Pac. 938 (1898); *Waite v. Teeters*, 36 Kan. 146, 14 Pac. 146 (1887); and *Union Pacific Railroad Co. v. Shannon*, 33 Kan. 446, 6 Pac. 564 (1885).

We conclude that under these circumstances, the district court abused its discretion in excluding the testimony of Anadarko's expert witness.

*Did the District Court Err in Refusing to Direct a Verdict for Anadarko?*

Anadarko argues the district court mistakenly failed to grant its motion for directed verdict following Norton Farms' presentation of its case in chief. Anadarko argues there was no evidence produced that Anadarko was negligent in either: (1) deciding to build the ramp; or (2) determining the location of the ramp. Anadarko also argues that there was no evidence of causation.

To recover for negligence, the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists is a question of law. Whether the duty has been breached is a question of fact. *Honeycutt v. City of Wichita*, 251 Kan. 451, 463-64, 836 P.2d 1128 (1992). The lessee under an oil and gas lease "has the implied right to make reasonable use of the surface in order to develop the land for the oil and gas," but "[w]hen this use is overreached and becomes injurious to the lessors' agricultural pursuits, courts have displayed great willingness to step in and im-

pose liability despite the lack of any express provision." *Thurner v. Kaufman,* 237 Kan. 184, 188, 699 P.2d 435 (1984).

Anadarko argues there was no evidence that it did not exercise ordinary care. Norton's theory, however, is that Anadarko either miscalculated the need for a ramp or built the ramp in the wrong place, and the testimony created at least jury questions whether the ramp was not necessary and whether it was not centered on the path of the sprinkler and thus not placed correctly. Given our standard of review, we must view the testimony in the light most favorable to Norton and conclude there was sufficient evidence to support Norton's theories and frame a jury question.

Anadarko also argues the district court mistakenly failed to grant its motion for directed verdict based upon Norton's failure to present sufficient evidence of causation. Norton stresses that evidence of the nature of the sprinkler's damage shows that it was damaged by the ramp constructed by Anadarko. Moreover, Norton's testimony suggested to the jury that the sprinkler fell off the concrete bag ramp, and this was corroborated by evidence of grooves from nozzle drops dragging in the field between the ramps and the point of collapse. Clearly, there was adequate evidence to establish a jury question on whether the ramp caused the damage that led to the system's collapse.

Viewing the evidence most favorably to Norton, we agree with the district court that these issues were entitled to jury determination. We conclude that the district court did not err in denying Anadarko's motion for directed verdict.

### Conclusion

In conclusion, we affirm the district court's denial of Anadarko's motion to amend the pretrial order and motion for directed verdict. We reverse the district court's exclusion of probative evidence, and we remand for new trial. We conclude, and the parties agreed during oral argument, that Hammer is no longer a party to this litigation given no appeal of the jury's finding that Hammer bore no fault. The balance of the case is remanded for new trial, to proceed in a manner not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.