NOT DESIGNATED FOR PUBLICATION

No. 124,997

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEFFREY WILLIAMS,
*Appellant*,

v.

THOMAS PINSON, HAYLEY PINSON,
JOHN TIM KELLOGG, and A. DEANN KELLOGG,
*Appellees*.

MEMORANDUM OPINION

Appeal from Cherokee District Court; ROBERT J. FLEMING, judge. Opinion filed February 10, 2023. Affirmed.

*Jeffrey Williams*, of Williams Law Office, of Baxter Springs, appellant pro se.

*John G. Mazurek*, of The Mazurek Law Office, LLC, of Pittsburg, for appellees Thomas and Hayley Pinson.

No appearance by appellees John and A. Deann Kellogg.

Before MALONE, P.J., HURST and COBLE, JJ.

PER CURIAM: In 2016, Jeffrey Williams, a lawyer appearing pro se, sued Thomas and Hayley Pinson and John and A. Deann Kellogg under various legal theories, including trespass, nuisance, tampering with a landmark, and obstructing a ditch. Williams owned land in Cherokee County that abutted land in which the Pinsons and the Kelloggs held an interest. When the alleged acts occurred, the Pinsons had entered a contract for deed to sell the land to the Kelloggs, and the Kelloggs had taken possession

1

of the land. The district court granted summary judgment for the Pinsons, explaining it was undisputed that they were not the equitable owners of the land, that they had not been on the land for several years except to show it, and that no evidence supported their participation in any of the acts alleged in Williams' petition. After a bench trial, the district court found John Kellogg liable for trespass and altering a watercourse, but it awarded Williams only nominal damages because he produced no evidence to support a diminution of the value of his land or any other monetary losses suffered because of the trespass.

On appeal, Williams alleges the district court committed many errors throughout the lawsuit, including its ruling on the Pinsons' summary judgment motion, its failure to grant a default judgment against the Kelloggs, its denial of two motions to compel discovery, its refusal to amend the final pretrial order, its decision not to permit him to add a claim for punitive damages, two rulings excluding evidence at the bench trial, and its denial of his motion for a new trial. Finding that Williams has presented no grounds for relief, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2014, Jeffrey Williams was on the north side of his rural property in Cherokee County when he noticed that a row of trees and a fence had been removed near his boundary line. The next month, Williams met John Kellogg, who along with his wife, Deann, had recently bought the land directly abutting the northside of his property from Dr. Thomas Pinson and Hayley Pinson. Kellogg was a crop duster and bought the land intending to build a runway for his operation. Soon after meeting Kellogg, Williams noticed that his field—located in a floodplain 4 feet below the neighboring property— appeared to be holding more water than usual. Several of Williams' family members agreed the field had never been so flooded—it had historically been very dry. Williams

2

soon discovered that a large ditch had been constructed on the north boundary of his property near where the fence and trees had been removed.

In December 2015, Williams sent a demand letter to the Pinsons and the Kelloggs, accusing them of trespassing and damaging his property. After receiving no response, Williams filed a lawsuit against the Pinsons and the Kelloggs on March 29, 2016, seeking damages and injunctive relief. Williams' petition alleged several causes of action, including: (1) "trespass to real property"; (2) "creating and maintaining an illegal nuisance"; (3) "tampering with a landmark"; and (4) "obstructing [a] ditch." Williams later amended his petition to include two more causes of action: (5) negligence and (6) "obstructing a drain and watercourse." The defendants were served with process.

The Pinsons timely answered Williams' petition, but the Kelloggs did not respond at first. After speaking with the Pinsons, the Kelloggs believed that they would be represented by the Pinsons' attorney. A conflict of interest was soon apparent, so the Kelloggs hired an attorney who filed an entry of appearance on September 19, 2016, and then moved three days later to file an answer out of time. In support of their claim of excusable neglect, the Kelloggs explained that they had been under the impression that Pinsons' answer to Williams' petition covered them as well, and that they immediately sought counsel upon learning of their mistake. They contended that they had acted in good faith and that the interests of justice would be best served by permitting them to answer the petition out of time.

On September 20, 2016, the Pinsons moved for summary judgment, arguing that Williams had no evidence that they had trespassed or otherwise damaged his land. Thomas Pinson attested that he had not been on the land for more than four years, other than when he showed it to Kellogg before selling it; Hayley Pinson corroborated this account. Thomas also stated that he had not farmed, ranched, dug ditches, diverted water, or otherwise developed the land in any way when he owned it, nor had he instructed

anyone to do so on his behalf. Williams opposed the Pinsons' motion for summary judgment, arguing the sale of the property from the Pinsons to the Kelloggs was possibly dubious and that the Pinsons were liable under a joint trespasser theory.

On March 7, 2017, in a six-page written decision, the district court granted summary judgment for the Pinsons. In its ruling, the district court found that the Pinsons' "land was conveyed under a contract for deed . . . to [the Kelloggs] on June 30, 2014. The Kelloggs took possession of the property in approximately May or June, 2014—despite the fact the Pinsons retained legal title, and a mortgage on the property[.]" The district court found that although the Pinsons continued to hold legal title to the land, the Kelloggs were the equitable owners. The district court also pointed to the fact that Williams had failed to controvert the Pinsons' assertion that they had not been on the land for more than two years before selling to the Kelloggs, nor had they had any excavation work performed during that time. Finally, the court noted the dearth of legal authority to support Williams' claim that the Pinsons were liable as joint tortfeasors or associates of the Kelloggs.

Meanwhile, Williams moved for a default judgment against the Kelloggs. On June 29, 2017, the district court denied Williams' motion for default judgment and granted the Kelloggs' motion to answer out of time. In its ruling, the district court found that the Kelloggs had acted in good faith and tried to correct their mistake as soon as they realized that the Pinsons' attorney could not represent them.

Over the following months, the parties encountered many discovery disputes and extended the time for discovery. In October 2018, Williams moved to compel discovery from the Kelloggs. After a hearing, the district court denied Williams' motion to compel discovery from the Kelloggs as well as from a company called Warstler Worldwide L.L.C., which Williams alleged had performed work on the Kellogg property.

Williams later moved for summary judgment, and he also moved to amend his petition to include a claim for punitive damages. At a hearing on May 16, 2019, the district court denied Williams' motion for summary judgment, finding that whether Kellogg trespassed on Williams' land remained a material disputed fact. The district court also denied Williams' motion to amend his petition to seek punitive damages stating, "I'm convinced that you don't have clear and convincing evidence to support your allegations." Finally, the district court went through the parties' pretrial questionnaires and requested the Kelloggs' attorney prepare the final pretrial order. After the hearing, Williams sent the Kelloggs' attorney a letter requesting a modification of the pretrial order to change his witness list. The district court held a hearing on the matter on June 18, 2019, but that transcript is not in the record on appeal. In any event, a final pretrial order was entered on the same day as that hearing, and Williams' request for a modification was denied.

The district court began a two-day bench trial on July 1, 2019. Williams, representing himself, called as witnesses many relatives and neighbors with knowledge of both his land and the Kelloggs' land. These witnesses testified that the fence and trees Kellogg removed had been located on Williams' property. A surveyor testified that the ditch Kellogg dug was located on Williams' land, and the excavation work extended about 16-17 feet onto the land. Williams' witnesses also testified that Kellogg had been pumping water into the ditch, which then flowed onto Williams' land. As a result of this action, Williams' land had become exceedingly wet. The evidence showed that Williams had not used any of his land for farming during this time.

For his part, John Kellogg denied causing any water to flow on to Williams' property and believed that it was just the "natural flow" because his property was on higher ground. Kellogg also admitted to removing "[a]bout 150 feet" of the fence as well as the row of trees, although he classified them as "just brush." Kellogg also conceded that he created the 400-foot ditch along the northern side of the fence and that he had pumped water into it. But he believed that his land extended to the fence line located on

5

the north corner of Williams' property. In other words, Kellogg believed that even if these activities were on Williams' land, he had not intentionally trespassed. But he ultimately agreed that according to land surveys, the trees and ditch were located on Williams' land. He asserted that the disputed area was his under a theory of adverse possession.

After considering the evidence, the district court found it was "uncontroverted" that Kellogg occupied the disputed portion of Williams' land, that he removed trees and a portion of a fence from that area, and that he created a ditch and pumped water into it. The district court found that these actions constituted a trespass and that Kellogg failed to meet his burden to show that he had adversely possessed the land. But the district court also found that Williams had produced "no evidence in this case regarding a diminution of value; what the value was before the trespass occurred as compared to what it's worth now. . . . [N]o evidence of any crop loss. . . . [N]o evidence of any monetary loss of any kind." The district judge asked Williams, "You would agree that I have not heard one word of a dollar amount that I could award you?"; Williams responded, "That's correct."

The district court ultimately found that Kellogg had committed a trespass and had changed the watercourse, but it found that Williams had failed to prove his other causes of action. The district court awarded Williams $1,000 in nominal damages and injunctive relief by ordering Kellogg to stay off Williams' property.

On August 13, 2019, Williams filed a motion for a new trial for damages. At a hearing on the motion, the district court again questioned Williams about whether there was any evidence presented during the trial about damages he suffered from Kellogg's actions. When Williams insisted that he had presented such evidence, the district court found that he "seem[ed] to confuse evidence discovered during discovery with evidence offered and admitted during trial. There's a difference." The district court also reminded Williams that he had agreed at trial that he presented no evidence of monetary damages. The district court denied Williams any relief on his motion for new trial.

6

The parties failed to agree on the final journal entry of judgment, and they moved to settle the journal entry. Ultimately, the journal entry of judgment was filed on January 5, 2022. Williams appeals the district court's judgment. The Pinsons have filed a brief on appeal, but the Kelloggs have not entered an appearance in the appeal.

DOES THIS COURT HAVE JURISDICTION OVER WILLIAMS' APPEAL?

After issuing a show cause order, this court ordered Williams to brief the issue of whether his appeal should be dismissed for lack of jurisdiction. It appears that Williams may have at first failed to include the journal entry of judgment in the record on appeal but later corrected the oversight. On appeal, Williams argues that this court has jurisdiction because although the trial concluded on July 2, 2019, the journal entry of judgment was not filed until January 5, 2022.

"An appellate court exercises unlimited review over jurisdictional issues and has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, the court must dismiss the appeal." *Wiechman v. Huddleston*, 304 Kan. 80, 84-85, 370 P.3d 1194 (2016). Subject to limited exceptions, appellate courts have jurisdiction only when an appeal is taken within the time limitations and in the manner prescribed by the applicable statutes. 304 Kan. at 86-87.

Generally, the timely filing of a notice of appeal—within 30 days from the "entry of [the] judgment" under K.S.A. 2021 Supp. 60-2103(a)—is jurisdictional. *In re Care and Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). But a judgment is effective only when a journal entry is signed by the district judge and filed with the clerk of the district court. K.S.A. 2021 Supp. 60-258; *Valadez v. Emmis Communications*, 290 Kan. 472, 482, 229 P.3d 389 (2010). The journal entry of judgment was not filed until January 5, 2022. It is unclear why it was filed so long after the trial concluded in July 2019—long after the district court filed a journal entry denying Williams' motion for a

7

new trial. Still, the date that the journal entry of judgment was filed controls the jurisdictional issue here. Because Williams filed his notice of appeal on February 1, 2022, within the 30 days of the filing of the journal entry, this court has jurisdiction over his appeal.

## DID THE DISTRICT COURT ERR IN GRANTING SUMMARY JUDGMENT FOR THE PINSONS?

Williams argues the district court erred in granting summary judgment for the Pinsons for several reasons; he mainly asserts that the district court failed to follow applicable legal standards and ignored disputed material facts. In response, the Pinsons defend the district court's ruling, noting that Williams failed to establish any disputed material facts in the summary judgment pleadings and that his argument on appeal continues to rely on misguided legal theories.

A party seeking summary judgment must show, based on appropriate evidentiary materials, that there are no disputed issues of material fact and judgment may be entered in its favor as a matter of law. *Trear v. Chamberlain*, 308 Kan. 932, 935, 425 P.3d 297 (2018). The standard for ruling on a summary judgment motion is well established:

> """'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.'"" [Citation omitted.]" *Trear*, 308 Kan. at 935-36.

An appellate court applies these same standards when reviewing a district court's granting of summary judgment. 308 Kan. at 936. But if this court determines that reasonable minds could differ as to the conclusions drawn from the evidence, it must find that summary judgment should have been denied. 308 Kan. at 936.

In their motion for summary judgment, the Pinsons argued that Williams "failed to present any evidence to support that [they] caused the damage to his property because no such evidence exists." They explained that they sold their land to the Kelloggs in 2014 and were now "simply a lender." Their motion contained a copy of the contract for deed between themselves and the Kelloggs and affidavits attesting that they had not performed any of the acts alleged in Williams' petition and had not even been on the land in years, except when they showed it to the Kelloggs before the sale.

Williams' response to the summary judgment motion questioned the validity of the sale of the Pinson/Kellogg property and contended that the Pinsons were liable because they remained the owners of the land. He tried to cast doubt on the validity of the real estate transaction between the Pinsons and the Kelloggs by questioning whether the sales contract was properly notarized. Williams also asserted that the Pinsons were liable as joint trespassers and the associates of the Kelloggs.

In ruling on the motion, the district court found that Williams failed to controvert several critical facts, including:

- The Pinsons had not been to the property for the two years before the sale, except to briefly show it to the Kelloggs.
- The Pinsons never returned to the property after selling it to the Kelloggs.
- The Pinsons never (1) dug ditches on the property, (2) placed dirt on Williams' land, (3) pumped water onto Williams' land, (4) removed fencing

9

or trees from Williams' land, (5) developed or graded their property, (6) removed or covered boundary marking posts, or (7) obstructed a ditch.

- The Pinsons did none of the acts alleged in Williams' petition, nor did they hire anyone else to perform them.

"'A defendant is entitled to summary judgment if [they] can establish the absence of evidence necessary to support an essential element of the plaintiff's case.'" *Hesler v. Osawatomie State Hospital*, 266 Kan. 616, 622, 971 P.2d 1169 (1999). In responding to a motion for summary judgment "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or by declarations . . . set out specific facts showing a genuine issue for trial." K.S.A. 2021 Supp. 60-256(e)(2).

As he argued in district court, Williams maintains on appeal that the Pinsons are the documented owners of the land because the deed was executed but not recorded—and are thus jointly liable for the Kelloggs' actions. He contends that none of the facts he presented to establish the Pinsons' ownership interest in the land "were cited or even acknowledged by the court in granting summary judgment."

Contrary to Williams' assertion, the district court addressed his evidence and arguments opposing summary judgment, but the district court explained that

"while [Williams] has offered surveys, photographs, etc. in support of his opposition against summary judgment, [he] has failed to offer any evidence that directly refutes the uncontroverted facts offered by [the] Pinsons, which, in sum, are that [the Pinsons] have not visited this property at the times in question except to show the property to sell; and have not engaged with others, or personally done any work on the property. There is simply no evidence connecting [the Pinsons] with the actions and/or damages [Williams] claims, except that they held legal title to the property during the relevant time period in [his] petition. Holding legal title to the property, alone, cannot establish [liability]."

10

Despite Williams' attempts to cast doubt on the validity of the real estate transaction between the Pinsons and Kelloggs, he failed to controvert the fact that the Pinsons conveyed their interest in the land to the Kelloggs under a contract for deed. This court has held that a purchaser's status as an equitable owner means the seller in an installment land contract is not liable for torts on the property once conveyed. *Graham v. Claypool*, 26 Kan. App. 2d 94, 97, 978 P.2d 298 (1999). The Kelloggs were the equitable owners and in exclusive possession of the property when the alleged tortious acts occurred. And even if there may have been a brief overlap between when Williams first observed changes on the north boundary of his property and when the sales contract was formally executed, Williams failed to controvert the Pinsons' assertions that they had not been on the land for more than two years before the sale, except to show the land to the Kelloggs, nor were they responsible for any excavation work performed during that time.

Williams cites *Sharpe v. Williams*, 41 Kan. 56, Syl. ¶ 1, 20 P. 497 (1889), for the proposition that "[a]ll joint trespassers are liable civilly for the injuries inflicted by their unlawful acts." But this nineteenth-century case citation does not support Williams' claim that the Pinsons are jointly liable for the Kelloggs' trespass onto Williams' land. *Sharpe* also states: "It is not necessary that all be present participating personally in the trespass. One who aids, encourages and abets those who commit the unlawful acts is equally liable as the actual participants." 41 Kan. 56, Syl. ¶ 2. But Williams offered no evidence in response to the summary judgment motion that the Pinsons aided, encouraged, and abetted the Kelloggs' actions in interfering with Williams' land.

In sum, the record here shows a complete lack of evidence that the Pinsons, either directly or indirectly, performed any of the acts alleged in his petition. No evidence showed that they trespassed on his property; created or maintained an illegal nuisance; tampered with a landmark; or obstructed a ditch. Williams also failed to show that the Pinsons knew that the Kelloggs would take any such action—let alone that they assisted or hired anyone to do so. A review of the summary judgment pleadings, affidavits, and

11

exhibits provided by the parties shows that there were no genuine issues of material fact and that the Pinsons were entitled to judgment as a matter of law.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION BY FAILING TO GRANT A DEFAULT JUDGMENT AGAINST THE KELLOGGS?

Williams next argues the district court erred by failing to grant a default judgment against the Kelloggs for their delay in answering his petition. This argument is intertwined with Williams' related contention that the district court abused its discretion in permitting the Kelloggs to file their answer out of time.

K.S.A. 2021 Supp. 60-255(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the party is in default." "In general, an appellate court reviews a default judgment on an abuse of discretion standard." *Lara v. Vasquez*, 33 Kan. App. 2d 128, 131, 98 P.3d 660 (2004). That said, it is not clear by what standard an appellate court reviews a district court's decision *not* to order a default judgment, perhaps because a party simply proceeds to trial if a default judgment is not granted. But a district court's decision to grant a defendant more time to answer a petition because of excusable neglect—a related issue here—is also a question left to the discretion of the district court. See *Columbia Savings Ass'n v. McPheeters*, 21 Kan. App. 2d 919, 920, 911 P.2d 187 (1996).

A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

12

Williams filed his petition on March 29, 2016. The Kelloggs hired an attorney who filed an entry of appearance on September 19, 2016, and then moved three days later to file an answer out of time. Williams moved for a default judgment against the Kelloggs on December 30, 2016, but the district court did not hold a hearing on the matter until June 2017. At that hearing, John Kellogg testified that he and his wife believed that the Pinsons' attorney would be representing them in the lawsuit. He explained that they promptly acted to hire their own attorney upon discovering that the Pinsons' attorney could not represent them. After hearing the parties' evidence and arguments, the district court found the Kelloggs had acted reasonably and in good faith, crediting their explanation for not responding to Williams' petition sooner.

Williams argued in district court that the Kelloggs' delay was prejudicial because many of his witnesses were elderly. The district court found this argument unpersuasive. Considering that Williams later filed an amended petition and sought many continuances while the lawsuit was pending, any prejudice stemming from the Kelloggs' delay in answering the petition appears to have been largely blunted.

Kansas courts have described default judgment as an "ultimate sanction" that "should only be granted in the most extreme cases." *Lara*, 33 Kan. App. 2d at 131; see also *Garcia v. Ball*, 303 Kan. 560, Syl. ¶ 3, 363 P.3d 399 (2015) ("The law disfavors default judgments[.]"). The Kelloggs had hired an attorney who filed an entry of appearance before Williams moved for default judgment. While the Kelloggs' delay in obtaining an attorney was perhaps misguided and injudicious, it cannot be said that their actions were severe enough to warrant the granting of a default judgment against them. Williams fails to show the district court abused its discretion by failing to grant a default judgment against the Kelloggs and allowing them to answer out of time.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING WILLIAMS' MOTIONS TO COMPEL DISCOVERY FROM THE KELLOGGS AND WARSTLER WORLDWIDE L.L.C.?

Williams argues the district court abused its discretion by denying his two motions to compel discovery. As for his motion to compel the Kelloggs, Williams does not elaborate on appeal what materials he was seeking, nor how those materials would have potentially impacted the case. Instead, he contends "the trial court should have granted the motion to compel to insure [*sic*] that the truth was being presented to the plaintiff." He also argues the district court abused its discretion by denying his motion to compel discovery from Warstler Worldwide L.L.C., a nonparty that Williams alleges performed work on the Kellogg property despite its denial of doing so, because of "the importance of records needed to find out who and what was behind this alteration."

A district court is granted the sound discretion to control discovery in a case, and its orders concerning discovery—including whether to grant a motion to compel—will not be disturbed absent a clear abuse of discretion. *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 513, 86 P.3d 513 (2004). As we said before, a judicial action constitutes an abuse of discretion if (1) no reasonable person would agree with it; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow*, 308 Kan. at 893. The burden is on Williams to show the district court abused its discretion. *Gannon*, 305 Kan. at 868.

Under K.S.A. 2021 Supp. 60-226(b), which defines the scope of discovery, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" And "the scope of relevancy in a discovery proceeding is broader than the scope of relevancy at trial." *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 620, 244 P.3d 642 (2010). This is because "'[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Short v. Blue Cross and Blue Shield of Kansas*, 56 Kan. App. 2d 914, 929, 441 P.3d 1058 (2019).

In some cases—generally when an opposing party fails to provide requested discovery materials—a party seeking discovery may move a court for an order to compel. K.S.A. 2021 Supp. 60-237(a)(3)(B) ("This motion may be made if: . . . A deponent fails to answer a question . . . a party fails to answer an interrogatory . . . [or] a party fails to produce documents or fails to respond that inspection will be permitted, or fails to permit inspection."). Here, despite Williams' framing of the issues, the problem is not whether the information that Williams sought was relevant or would have benefitted his case. In both instances, the entities he sought to compel discovery from responded that they simply did not have the documents or materials Williams requested.

*Motion to compel the Kelloggs*

Williams first argues the district court abused its discretion in denying his motion to compel the Kelloggs to provide discoverable material and "records pertaining to construction activity on [their] property." In his motion to compel, Williams asserted that the Kelloggs had not produced several discoverable items he had requested, including: (1) "[r]eceipts for earthwork performed on the real estate owned by the [Kelloggs]"; (2) "[f]uel receipts and quantity of fuel used in the construction of" the Kelloggs' runway; (3) the "original handsigned contract for deed"; (4) "[r]ecords documenting the amount of earth moved in the flood plain before and after a permit was issued for construction of runway"; (5) "[l]etters and correspndence [*sic*] issued to neighboring landowners" about the construction performed on the Kelloggs' property; and (6) financial records from the construction performed on the Kelloggs' property. Williams also requested information on the Pinsons' sale of the property to the Kelloggs.

At the hearing on Williams' motion, Kellogg provided a copy of the original deed but asserted he did not have several items Williams sought, including certain receipts and records from the excavation work on his property. Kellogg explained that he did not have these materials because he had performed much of the work himself and had not kept

15

records. Kellogg explained that he had no fuel receipts but that he had provided his tax returns as requested. Williams argued that it was not reasonable, or even believable, that Kellogg had not kept records of the work done on his property. But the district court found that the Kelloggs' responses to Williams' discovery requests were adequate and noted, "I can't make him produce what he doesn't have."

On appeal, Williams rehashes the same argument he made before the district court—that is, his motion to compel the Kelloggs should have been granted because he did not receive all the materials and records that he sought during discovery. Williams' argument misses the mark for the same reason it did previously. The purpose of a motion to compel is to force a party to comply with discovery requests and provide responses and materials. Here, although Williams may have doubted the responses to his discovery requests, the Kelloggs asserted that they had turned over all the materials and records in their possession—an assertion the district court accepted. The fact that Williams believes that the items he did not receive were necessary to his case does not render the district court's denial of his motion an abuse of discretion. The district court properly noted that it could not compel the Kelloggs to produce materials they did not possess; it cannot be said that no reasonable person would agree with its ruling.

*Motion to compel Warstler Worldwide L.L.C.*

Williams asserts the district court committed another error in denying his motion to compel discovery from Warstler Worldwide L.L.C.—a company that he alleged had performed excavation work on the Kelloggs' property. He contends the district court's decision was based on prejudice and the discovery he could have obtained would have helped prove his claim of damages. Williams argues that because the requested materials were relevant, the district court should have granted his motion to compel.

16

In his motion to compel, Williams requested: "Any and all records held by" Warstler Worldwide L.L.C. "concerning work performed on the Kellogg Pinson property" as well as the dates its owner performed work for the Kelloggs. In response to the request, Bret Warstler, owner of the company, provided receipts for hauling a piece of equipment for the Kelloggs and notes documenting baling hay for the Kelloggs. But he testified that his company had performed no other work on the Kelloggs' land.

In denying Williams' motion to compel, the district court found that no evidence showed that Warstler had performed, or contracted to perform, any excavation work on the Kelloggs' property. The witness Williams called to rebut Warstler's denial—Edgar Ray—stated that although he had seen Warstler on the Kelloggs' property, he did not know if Warstler had done work on it. Williams cannot show that the district court abused its discretion in denying his motion to compel records from Warstler Worldwide L.L.C. The district court listened to, and credited, the owner's testimony that the company had never performed construction work on the Kellogg property. The district court could not compel Warstler to provide materials that he did not have. Even if Williams could show an abuse of discretion, the error did not affect the outcome of the trial considering Williams prevailed on the issue of liability—the district court found that Kellogg created a ditch on Williams' land and pumped water into it. Thus, any error was harmless.

DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING WILLIAMS' MOTION TO AMEND THE PRETRIAL ORDER?

Next, Williams argues the district court erred in denying his request to amend the final pretrial order. This court reviews a denial of a motion to amend a final pretrial order for an abuse of discretion. See *Norton Farms, Inc. v. Anadarko Petroleum Corp.*, 32 Kan. App. 2d 899, 904, 91 P.3d 1239 (2004). In exercising its discretion, the district court should have "proper regard for what is just and fair under the existing circumstances, and [should] not act in an arbitrary fashion or unreasonable manner." 32 Kan. App. 2d at 902.

17

An abuse of discretion will only be found where no reasonable person would agree with the decision or if it is based on an error of fact or law. *Biglow*, 308 Kan. at 893.

A final pretrial order "controls the subsequent course of the action unless the court modifies it." K.S.A. 2021 Supp. 60-216(d). A "court may modify the order issued after a final pretrial conference only to prevent manifest injustice." K.S.A. 2021 Supp. 60-216(e). The party requesting the amendment must show manifest injustice at the time of the motion. *Herrell v. Maddux*, 217 Kan. 192, 195, 535 P.2d 935 (1975). "The essential purpose of pretrial conference procedure is to prevent surprise and enable the parties to prepare for trial with the assurance that contentions, issues, and evidence will not be moving targets." *Norton Farms, Inc.*, 32 Kan. App. 2d at 904. Thus, when a party tries to present evidence in an untimely manner, the district court has discretion to deny a motion to amend the pretrial order to add the untimely evidence. 32 Kan. App. 2d at 902-04.

Williams sent the Kelloggs a letter requesting a modification of the pretrial order because several of his witnesses had passed away while the lawsuit was pending. Another letter refers to Williams moving to modify the pretrial order, but the motion is not in the record on appeal. The district court held a hearing on the matter on June 18, 2019, but that transcript also is not in the record on appeal. In any event, a final pretrial order was ultimately entered, and the record contains a journal entry denying Williams' request for modification. What is not contained in the record, or in Williams' brief, is any indication of the witnesses he sought to include or the expected substance of their testimony. Nor is there any explanation of the district court's rationale for its ruling. Without this information, this court cannot determine whether the district court's ruling denying his motion to amend the pretrial order amounted to a manifest injustice.

As the party disputing the court's ruling, Williams carries the burden to designate a record sufficient to present his arguments and establish his claims before this court. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013).

18

Williams' failure to designate a sufficient record provides no context for this court to review the facts or the reasoning the district court used in denying the motion to amend the pretrial order. Williams has not shown that the district court's decision was based on an error of law or fact. And—without a record of the ruling—it cannot be said that no reasonable person would agree with its decision. Thus, Williams fails to show the district court abused its discretion in denying the motion to amend the pretrial order.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING WILLIAMS' MOTION TO AMEND HIS PETITION TO ADD A CLAIM FOR PUNITIVE DAMAGES?

Williams next argues the district court should have permitted him to amend his petition to add a claim for punitive damages—he does not explain the grounds on which the district court allegedly abused its discretion. Appellate courts review a district court's decision on a motion to amend a petition to add a claim for punitive damages for an abuse of discretion. *McElhaney v. Thomas*, 307 Kan. 45, 57, 405 P.3d 1214 (2017).

Punitive damages are intended to punish a defendant for "malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs." *Cerretti v. Flint Hills Rural Electrical Co-op Ass'n*, 251 Kan. 347, 366, 837 P.2d 330 (1992). "Punitive damages are awarded on the theory that the defendant deserves punishment for his or her wrongful acts." *Adamson v. Bicknell*, 295 Kan. 879, 888, 287 P.3d 274 (2012). To be entitled to punitive damages, a plaintiff must prove their claim by "clear and convincing evidence . . . that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A. 60-3702(c). But before a district court may permit a party to file an amended pleading claiming punitive damages, the plaintiff must establish that there is a probability that they will prevail on their claim that the defendant's conduct was willful, wanton, or made with malice. K.S.A. 60-3703.

19

Williams sought to amend his petition to add a claim for punitive damages; specifically, he requested "$40,000 in punitive damages be assesed [*sic*] because of the egregious and unbecoming conduct of defendants." At a hearing on his motion, Williams clarified that he was seeking punitive damages based on Kellogg's conduct while the case was pending—mainly during discovery. The district court explained to Williams that Kellogg's conduct after the case was filed was irrelevant. The district court then asked Williams if he had any evidence that Kellogg knew he was trespassing when he dug up the trees and fence to build his ditch—that is, evidence of willful conduct in the subject of the lawsuit. In response, Williams stated that affidavits from his neighbors described Kellogg pumping water onto his property. But the district judge found this showing insufficient stating, "Well as you know the bar is pretty high for obtaining punitive damages. I'm convinced that you don't have clear and convincing evidence to support your allegations. Motion to amend your petition is denied."

On appeal, Williams does not dispute the district court's ruling beyond his assertion that the "documented testimony mixed with the pre-trial exhibits, actions towards discovery, and present sense recorded letter document the hostility if not danger the plaintiff faced throughout this lawsuit." But as the district court found, the issues that arose between Kellogg and Williams during the litigation do not show that Kellogg acted with willful or wanton conduct, or with fraud or malice, for the purposes of seeking punitive damages. The district court considered all the facts that Williams presented and stated the applicable law before making its decision. Williams fails to show the district court abused its discretion in denying his claim for punitive damages.

DID THE DISTRICT COURT ABUSE ITS DISCRETION BY NOT ADMITTING INTO EVIDENCE A LETTER FROM THE "KANSAS DEPARTMENT OF WATER RESOURCES" UNDER THE BUSINESS RECORDS EXCEPTION?

Williams asserts the district court abused its discretion when it ruled that a letter from the "Kansas Department of Water Resources" was inadmissible at trial under the

business records exception to the hearsay rule because he did not have a qualified witness to support its authenticity and accuracy. Under K.S.A. 2019 Supp. 60-460(m), known as the business records exception: "Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein" may be admissible if the judge finds that the record was "made in the regular course of a business at or about the time of the act, condition or event recorded" and "the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness." Upon a preliminary showing of a business record's authenticity and accuracy, admissibility is a question left to the discretion of the district court. *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 531, 856 P.2d 1313 (1993).

At trial, while Williams was testifying on his own behalf, he explained that he had contacted a state agency to ask if they had any information about why his property was retaining so much water. He explained that "some state officials with the State of Kansas" responded by sending him a blind carbon copy of a letter it had sent the Kelloggs and then sought to enter the letter into evidence, but the Kelloggs' attorney quickly objected on grounds of hearsay. The district court asked whether Williams had a witness to lay the requisite foundation for the letter and qualify it under the business records exception. Williams responded that the letter should be admitted under the exception because "[i]t is a letter from an official made at the time within the due course and was sent to me." But without a qualified witness, the district court sustained the Kelloggs' objection. On appeal, Williams' position has not changed—he contends the letter was admissible simply because he received it and it was from a state agency.

To the extent that Williams is arguing that the district court committed an error of law in ruling that he was not a qualified witness to establish the authenticity and accuracy of the letter, his argument fails. As explained above, to bring hearsay evidence within the business records exception of K.S.A. 2019 Supp. 60-460(m), the judge must find that (1) the document was made in the regular course of business at or about the time of the act,

21

condition, or event recorded and (2) the sources of information and the method and circumstances of their preparation were such as to indicate their trustworthiness. Williams did not have a witness who could lay the requisite foundation for the district court to make these findings, and Williams could not lay the foundation himself.

The premise of the business records exception is that information that is part of a regularly conducted activity, kept and regularly checked for correctness, has a high degree of reliability and trustworthiness. Williams provided no basis for the district court to determine the reliability of the source of information, method, or preparation of the letter. The mere fact that Williams received a letter from a state agency does not provide the requisite assurances required under K.S.A. 2019 Supp. 60-460(m) for admissibility under the business record exception. We find the district court did not abuse its discretion in denying the admission of the letter from the "Kansas Department of Water Resources."

DID THE DISTRICT COURT ABUSE ITS DISCRETION BY NOT ADMITTING INTO EVIDENCE THE AFFIDAVIT OF MARY WILLIAMS?

Williams next asserts the district court abused its discretion when it ruled that an affidavit from his deceased mother, which supposedly contained some information about the boundary lines of his property, was inadmissible. Williams argues the affidavit was admissible under certain exceptions to the hearsay rule. Appellate courts review the admissibility of evidence under an exception to the hearsay rule for abuse of discretion; discretion is only abused if the decision is unreasonable or based on an error of fact or law. *State v. Mattox*, 305 Kan. 1015, 1033, 390 P.3d 514 (2017).

At trial, Williams argued his mother's affidavit was admissible under K.S.A. 2019 Supp. 60-460(v) or (y), which pertain to statements about family history and evidence of reputation in a community concerning boundaries, respectively. He also asserted that the affidavit could be admissible as a dying declaration because his mother "was available at

the time and she's no longer available[.]" On appeal, Williams argues K.S.A. 2019 Supp. 60-460(v) applied "because it was an affidavit from the previous owner and mother of the defendant. Thus, a family history of the property." He argues K.S.A. 2019 Supp. 60-460(y) applied because it "is more specific in that it specifically lists *boundaries*."

We first examine the content of the affidavit—or at least the portion of it that can be found in the record on appeal. The district court read the entire affidavit during the hearing on Williams' motion for a new trial:

> "'I was Executrix for the estate of my mother Margie A. Williams and my father Roy C. Williams. Darrel Shumake was our attorney for these legal matters. Jeffrey Williams previously had performed legal services for my late mother Margie Williams. I am instructing Jeffrey Williams not to disclose any information regarding any compensation he may have received in this representation. I am also demanding that Mr. Shumake not use any information from the representation from the estates of Roy C. or Margie A. Williams, against Mr. Jeffrey Williams, as they at one time had an ownership interest in real estate now owned by Jeffrey Williams, which is the subject of litigation in Case No. 16-CV-24, Williams v. Pinson. Again, I do not want disclosure of any legal services my late mother, Margie A. Williams, paid to have performed.'"

Williams first argues the affidavit was admissible under K.S.A. 2019 Supp. 60-460(v)—"Statement concerning family history of another." But the statements in the affidavit have no assertions about the family history of another; the affidavit mainly relates to Williams' mother recounting her representation by her son and the attorney who was representing the Kelloggs in the litigation. Because the affidavit does not concern "the birth, marriage, divorce, death, legitimacy, race-ancestry, relationship by blood or marriage or other similar fact of the family history of a person other than the declarant[,]" K.S.A. 2019 Supp. 60-460(v) was not applicable.

23

Williams next asserts the affidavit was admissible under K.S.A. 2019 Supp. 60-460(y), which applies to statements of a person's reputation in a community, if that reputation concerns "[b]oundaries of or customs affecting, land in the community[.]" Williams contends this exception applies because it mentions "boundaries," but his argument is flawed for two reasons. First, the subsection states that it pertains to statements about a person's "reputation in a community as tending to prove the truth of the matter reputed," which is not the content of his mother's affidavit nor the purpose for which he sought its admission. K.S.A. 2019 Supp. 60-460(y). Second, even if the affidavit pertained to reputation evidence, it does not reference boundaries or customs affecting land in the community as Williams suggests. The affidavit mainly considered Williams' mother's representation and handling of the estate before her passing.

The affidavit does not establish Williams' claims about his ownership of the land and the boundaries of the property. More importantly, Williams established the boundaries of his land through the survey evidence that he presented at the trial. He prevailed on the liability issue and satisfactorily proved to the district court that Kellogg trespassed on his land. Any error by the district court by not admitting into evidence the affidavit of Mary Williams did not affect the outcome of the trial.

DID THE DISTRICT COURT ERR BY DENYING WILLIAMS' MOTION FOR NEW TRIAL?

Finally, Williams argues the district court erred when it denied his motion for a new trial on the issue of damages. Even though Williams prevailed at trial on liability, he argues that the district court's ruling denying his motion was flawed because the verdict on damages was "so inadequate as to indicate passion and prejudice."

Under K.S.A. 2021 Supp. 60-259(a), a district court may grant a new trial for many reasons including:  an abuse of discretion by the court, misconduct by an opposing party, a party not being afforded a reasonable chance to present evidence, or if the verdict

24

was given under the influence of passion or prejudice. A district court has discretion to rule on such a motion, and an appellate court will not disturb that ruling absent an abuse of discretion. *City of Mission Hills v. Sexton*, 284 Kan. 414, 421, 160 P.3d 812 (2007).

Williams requested damages of $70,522.85 in his amended petition. But after hearing the evidence at trial, the district court found that Williams had produced no evidence about the diminution of value of the land, no evidence of any crop loss, and no evidence of any monetary loss of any kind. The district judge asked Williams, "You would agree that I have not heard one word of a dollar amount that I could award you?" Williams responded, "That's correct." The district court awarded Williams $1,000 in nominal damages and injunctive relief by ordering Kellogg to stay off Williams' property.

Williams later filed a "Motion For New Trial For Damages," alleging the district court prevented him from presenting evidence regarding damages and that the Kelloggs committed discovery abuses that frustrated his efforts to prove his claim of damages. At the hearing on the motion, the district court again asked Williams what evidence there was of any diminution in the value of the land, to which Williams responded that he had testified about the lost value in his deposition (which was not admitted into evidence at trial). The district court noted that Williams seemed to "confuse evidence discovered during discovery with evidence offered and admitted during trial. There's a difference." Ultimately, the court denied Williams' motion for new trial, finding it had "zero merit."

On appeal, the only evidence Williams points to as supporting his claim for monetary damages above the nominal damages he was awarded are pictures showing "the massive amount of damage done to an entire field[.]" While these pictures may show the result of Kellogg's actions of removing Williams' trees and fence and flooding a ditch that spilled onto his land, they do not support any specific figure of damages. As the district court found, Williams presented no evidence of the diminution of value of his land, any crop loss, or any monetary loss caused by Kellogg's trespass or other actions. The district

25

court denied Williams' motion for a new trial because he simply did not present evidence to support damages being awarded. Williams fails to show the district court abused its discretion by denying his motion for new trial.

Affirmed.